| 18 | 609 |
|---|---|
| 86 | 587 |
| 88 | 59 |
| 18 | 609 |
| 92 | 779 |
| 18 | 609 |
| 114 | 618 |
| 18 | 609 |
| 122 | 249 |
| e122 | 546 |

No. 88.—WOOTEN & Co. plaintiffs in error, *vs.* ARCHIBALD·
M. NALL, defendant in error.

[1.] The production of papers upon notice, does not make them evidence in·
the cause, unless the party calling for them inspects them, so as to become·
acquainted with their contents; in which case, they are admitted as evi-
dence for both parties and on all subsequent trials.

[2.] Receipts and other papers, are admitted in evidence upon no other proof
than the presumption of their fairness, founded upon the experience of hu-
man conduct, in the due course of trade and transaction of business.

[3.] The mere fact that the name of a witness appears as a party upon the
record, is not sufficient to exclude him if it appears, affirmatively, that he
has no interest in the suit.

[4.] If the witness be a party to the issue to be tried, he shall not be exam-·
ined as a witness.

[5.] If not a party to·the issue to be tried, his competency or incompetency,·

as a witness, depends, as in every other case, upon the question of interest in the event of the suit.

[6.] As a general rule, at Common Law, in an action of assumpsit, against two defendants upon a joint contract, judgment cannot be given against one defendant without the other.

[7.] Under the laws of this State, in all actions where two or more defendants are joined, and it shall be made to appear, on the trial, that a portion of them are not liable, and ought not to have been joined in the action, the suit shall not abate or be quashed on that account; but the action may thereafter proceed against the other defendant or defendants.

[8.] One of two dendants, in an action *ex contractu*, who has been defaulted, or against whom a verdict has been rendered, and he has failed or refused to appeal, is a competent witness for the others—provided he be otherwise disinterested, and there is no policy of the law which will exclude him, aside from his interest.

Assumpsit, in Spalding Superior Court. Tried before Judge Starke, November Term, 1854.

This was an action of assumpsit, brought by Archibald M.. Nall, against Addison A. Wooten and Hugh P. Kirpatrick, upon the following promissory notes :

" Griffin, February 16th, 1852.
One day after date, we or either of us, promise to pay A. M. Nall or bearer, Nine Hundred and Ninety $\frac{70}{100}$ Dollars for value received.               A. A. WOOTEN."

" Griffin, February 16th, 1852.
By the 25th day of May next, we or either of us, promise to pay A. M. Nall or bearer, One Thousand and Seven $\frac{12}{100}$ Dollars for value received.      A. A. WOOTEN.''

The declaration contained three counts. In the first count, it was "alleged that the plaintiff sold a stock of goods to Wooten, for the use and benefit of Wooten & Kirkpatrick; that it was the understanding and agreement between plaintiff and Wooten, and assented to by Kirkpatrick, that both were to sign the notes, which Kirkpatrick afterwards refused to do."

In the second count, it was alleged "that the defendants were indebted to the plaintiff, in the sum of $1.997_{\frac{82}{100}}$ dollars, for goods, wares and merchandize, sold and delivered by plaintiff to the defendants "

The third count was upon an account, stated between the plaintiff and the defendants, for the sum aforesaid.

To this declaration the defendants demurred, upon the ground of duplicity; and also pleaded the general issue, and no partnership, &c.

At the first trial in the Inferior Court of said county, the Jury found a verdict for the plaintiff.

Kirkpatrick took an appeal to the Superior Court, Wooten did not appeal.

The cause came on to be tried on the appeal, at November Term, 1854, of the Superior Court of said county.

The Court over-ruled the demurrer to the declaration, and defendant excepted.

Much testimony was introduced by the plaintiff, which is not necessary here to set out.

After he closed his case, the defendant offered in evidence an instrument in writing, made by Wooten to Kirkpátrick, dated 12th day of September, 1851—produced in Court, under a notice from plaintiff, in which Wooten stated that Kirkpatrick bought of him one half of his stock of goods, and agreed that Kirkpatrick should hold the two last instalments of the purchase money, to indemnify him against his security-ship for Wooten, on a note to Henly Varner.

The Court rejected the testimony, and defendant excepted.

The defendant then offered Addison A. Wooten as a witness. Plaintiff objected to the witness. The Court sustained the objection, and defendant excepted.

The defendant then proposed to pay all cost which had accrued in the case, and to deposit whatever sum of money the Court might adjudge sufficient to cover all future cost; he also proposed to release Wooten from all liability to him, arising out of the case. The Court still rejected the witness, and defendant excepted.

The defendant then offered in evidence two receipts from Wooten to Kirkpatrick, for part of the purchase money for the goods; one dated in May, 1851; the other in February, 1853. The Court rejected the receipts, and defendant excepted.

The defendant then offered in evidence a note and account due the Planter's Manufacturing Company, by Wooten & Nall, dated in July, 1850, which Wooten had received in part payment of the purchase money, for his interest in the stock of goods, of Wooten from Kirkpatrick, and which Nall admitted he had received from Wooten in a settlement with him.

The Court rejected the evidence, and defendant excepted.

Among other things, the Court charged the Jury, "that if they were satisfied that these goods were sold and furnished by Nall to Wooten, upon the promise of Kirkpatrick to stand Wooten's security, which promise Kirkpatrick did not intend to perform; and if, from and after the sale, Kirkpatrick dealt with the proceeds as a partner of Wooten, participating with him in the profits and losses on the goods, then, in the absence of sufficient proof to the contrary, you may conclude that Kirkpatrick was a partner at the time of the purchase, and charge him accordingly. If the goods were treated by Kirkpatrick as the property of Wooten & Co. in the interval, from the time of the sale to the time the partnership was published, it is presumptive evidence that the goods were originally purchased for the use of the firm by Wooten; and Kirkpatrick, dealing with the goods as a partner, will be sufficient to charge him as a partner, at the time of the sale by Nall, unless there be satisfactory proof to the contrary." To which charge defendant excepted, upon the ground that there was no evidence to warrant it.

Defendant requested the Court to charge the Jury—"That in order to charge Kirkpatrick on his promise to stand security for Wooten, it was incumbent on Nall to have insisted that the securityship be then acknowledged and put in writing, and signed by Kirkpatrick, *pari passu*, with the delive-

ry of the goods by Nall to Wooten, or that the contract should have been reduced to writing." The Court refused to give the charge, and defendant excepted.

GREEN; FLOYD; MARTIN, for plaintiffs.

McCUNE; HARMAN; ALFORD & MOORE, for defendant.

The Court not being unanimous, delivered their opinions *seriatim.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

Considering the declaration as substantially a suit against Wooten & Kirkpatrick, *as co-partners,* we affirm the judgment of the Court below, in over-ruling the demurrer to the writ, upon the ground of duplicity.

[1.] It seems that Kirkpatrick had become security for Wooten, to one Henley Varner, for fifteen hundred dollars; and to indemnify Kirkpatrick against liability or loss, Wooten executed to him an instrument in writing, to the effect, that the two last instalments due to Wooten by Kirkpatrick, for one half of the stock of goods bought of Nall, the plaintiff, and amounting to upwards of eighteen hundred dollars, should be kept back by Kirkpatrick, and applied, by him, to the payment of the debt to Varner, or so much thereof as might be needed for that purpose. This paper had been produced in Court under notice to the defendants, and inspected by the plaintiff's Counsel at a former trial. Was the defendant entitled to read this document? Our learned brother ruled the evidence out, and error is assigned upon the rejection of this proof.

Mr. *Greenleaf* says—" The production of papers, upon notice, does not make them evidence in the cause, unless the party calling for them inspects them, so as to become acquainted with their contents; in which case, the English rule is, that they are admitted as evidence for both parties." (1 *Greenlf. Ev.* §563.)

And the reason assigned by the author is, that "it would give an unconscionable advantage to enable a party to pry into the affairs of his adversary, for the purpose of compelling him to furnish evidence against himself, without, at the same time, subjecting him to the risk of making whatever he inspects evidence for both parties."

With the wisdom of this rule, we have nothing to do. It is not only not uniform in the American Courts, but in the case of *Gordon vs. Secretan*, (8 *East.* 548,) it was said to have been over-ruled and denied altogether. See, also, *Sayre vs. Kitchen*, (1 *Esp. R.* 209,) *and* 2 *Evans' Pothier*, 187. The Supreme Court of Pennsylvania, in *Withers and others vs. Gillespy*, (14 *S. & R.* 10,) consider the argument against the rule to be insuperable. On the other hand, in support of the rule, we have 2 *Tidd. Pr.* 804. 2 *T. R.* 41, *and Thompson vs. Jones, and Passel vs. Godsall, the recited.* 5 *T. R.* 386. 5 *Esp. cases*, 235. 7 *Car. & Payne*, 386. 1 *Caines'*, 277. 2 *Wash. C. C. Rep.* 482, 484, (*note.*) 1 *Harring's R.* 233, 284. 4 *Shep.* (16 *Maine*) 224. 8 *Sm. and Mar.* 362, *and* 1 *Cush.* 33, (*Massachusetts.*)

Holding the rule itself, then, to be too well settled upon the authorities to be disturbed, the inquiry presents itself, did it extend to the second trial? And upon this point the books are silent. It must be decided, therefore, upon principle. What is the reason for making papers, produced under notice, and inspected by the party calling for them, evidence for his adversary? It is, says Mr. *Greenleaf*, because it would give an unconscionable advantage, to enable a party to pry into the affairs of his adversary, for the purpose of compelling him to furnish evidence against himself, without, at the same time, subjecting him to the risk of making whatever he inspects evidence for both parties.

We ask, was not this paper inspected by the plaintiff? Had he not been enabled to pry into the affairs of the defendants? Having thus acquired an advantage of which he could avail himself throughout the litigation, is it right to restrict the corresponding benefit given by the law to the de-

fendant to the *first* trial? No such limitation is suggested in
the rule; we see no good reason, even if we had the author-
ity, to impose it.

[2.] Kirkpatrick offered two receipts, both made to him by
Wooten—one bearing date the 2d day of May, 1851, and the
other, on the 2d day of February, 1853—each purporting to
be for a part payment of the purchase-money due by Kirk-
patrick to Wooten, for one half of the goods bought by Woot-
en of Nall. He likewise tendered in evidence a note and ac-
count due by Wooten & Nall to the Planter's Manufacturing
Company, which had been taken up by Kirkpatrick and de-
livered to Wooten, in part payment of the debt due to him by
Kirkpatrick, for the one half of the stock of goods bought of
Nall; and which note and account Nall admitted had been
turned over by Wooten to him, upon settlement. The whole
of this testimony was rejected; and we propose to consider
and dispose of it all together.

Why the latter portion of this proof, namely: the note
and account, were excluded, we cannot very readily compre-
hend. The issue was, whether or not Kirkpatrick was a
partner of Wooten, in the first purchase from Nall? Now,
under any view of the transaction, was not Nall liable to the
Planter's Manufacturing Company, upon these demands; and
was it not a discharge to him, upon this indebtedness? And
was it not a good payment to Mr. Wooten, who was also
bound upon these same claims?

It is suggested in the argument—perhaps it appears from
the record—that Kirkpatrick acted as the agent of Nall &
Wooten, and that the note and account were satisfied out of
the funds belonging to his principal; but the evidence does
not show this. At any rate, it was a question of fact to be
submitted to the Jury. It may not be conclusive that the
money was advanced out of his own pocket. It is certainly
*prima facie* proof that it was.

The two receipts from Wooten to Kirkpatrick were with-
held, upon the ground that it would be allowing the parties to
manufacture testimony for themselves.

But is this so? What interest had Wooten in combining with Kirkpatrick for such a purpose? Was not his interest directly the opposite? Whatever the fact may be, such would be the judgment of law upon the case. But apart from this, admitting the transaction to be *bona fide*, and' what right has this or any other Court, without proof, *to assume* that it was otherwise? are not these receipts just such instruments as should and would have been given in conducting the affairs between these person in the usual manner? Kirkpatrick buys a lot of merchandise from Wooten and makes him two payments, at such dates and intervals of time as would likely accrue in the management of such matters. The creditor party, diligent in claiming and collecting his dues, calls for his money; the debtor party, equally vigilant in guarding his rights, exacts a receipt, which is executed and delivered; and now, when offered in proof, *it is rejected,* because, forsooth, it may be false and fraudulent, and fitted up to meet the case!

And so it may; and so the sun, which has risen in the east for six thousand years, may not do so to-morrow. Experience, however, would warrant a different conclusion; and so, the experience of human conduct, as to transactions similar to this, would justify a different presumption. Where an order for the payment of money, or the delivery of goods, is found in the hands of the drawee, or a promissory note is in the possession of the maker, a legal presumption is raised, that he has paid the money due upon it, or delivered the goods ordered. (1 *Starkie's R.* 225. 3 *Esp. R.* 196. 7 *Wend.* 198. 9 *Ibid*, 323. 9 *S. & R.* 385. 1 *Starkie's R.* 445. *Ibid*, 374.) So, a bank note will be presumed to have been signed before it was issued, though the signature be torn off; such being the orderly course of such business. (2 *Rob. Lou. Rep.*) The same presumption, and for the same reason, arises in favor of the genuineness of these instruments; subject to be rebutted, to be sure, as are all other presumptions. Mr. Wooten having been excluded from testifying, in what other way could these payments have been proven, but by the re-

ceipts? Indeed, had the attempt been made to supply this proof by parol, and it had appeared that receipts had been given, the witness would not have been allowed to proceed until they were produced or accounted for; for, although receipts may be contradicted by oral testimony, still they are *prima facie;* the best evidence of the facts which they recite.

[3.] [4.] [5.] [8.] The exception of Col. B. W. Mc-Cune having been waived, and finding nothing in the charge requiring criticism, we proceed to examine the only remaining, and by far the most important question in this record, namely: whether Wooten be a competent witness in behalf of Kirkpatrick, with or without the release tendered, and notwithstanding the offer made to pay all costs which had accrued, and to deposit whatsoever sum of money the Court might direct, by way of indemnity against all future costs.

To the action instituted against Wooten & Kirkpatrick, as partners, Wooten made no defence. Kirkpatrick pleaded that he was no partner. A verdict and judgment were rendered against both defendants, from which Kirkpatrick, alone, appealed; and it was upon the appeal trial that the testimony of Wooten was offered, by Kirkpatrick, to sustain his plea, and rejected by the Court; and upon the ground of his being a party to the record.

In *Allison vs. Chaffin and another,* (8 *Ga. R.* 330,) this Court held that where an appeal is entered according to the Act of 1839, by one of several defendants, the party not appealing is bound by the first verdict. And if this be so, and that decision was a correct construction of the Act, there is, of course, an end of the question; for Wooten having ceased to be a party to the record, in the sense in which that term is used by Courts, which hold that such a party is incompetent to testify, no such objection could operate as to him.

I have always believed there were intrinsic difficulties in executing the Act of 1839. (*See* 1 *Kelly,* 475, 484.) Sub-

sequent discussions respecting it have not changed that opinion.

We gather from the preamble to the Act, that a contrariety of opinion existed among the Judges of the State, and a different practice prevailed in the various circuits, touching the right to appeal, under certain circumstances. To remedy this inconvenience, and to make the law uniform, it was provided, that whenever there was more than one party plaintiff or defendant, and one or more of said parties plaintiff or defendant desired to appeal, and the other or others failed or refused to do so, it should be lawful for any party, plaintiff or defendant, to enter his appeal, under such rules and regulations as are now provided by law; and that upon the appeal of either plaintiffs or defendants aforesaid, the whole record should be taken up; but in case damages should be awarded upon such appeal, such damages should only be recovered against the party or parties appealing, and their securities, and not against the party or parties failing or refusing to appeal. It is further declared, that in case any security or securities shall be compelled to pay off the debt or damages for which the judgment may be entered in any cause, he, she or they shall have recourse only against the party or parties for whom he, she or they became security or securities.

Those who controvert the construction put upon the Act of 1839, by this Court, maintain that one of several plaintiffs or defendants may appeal for the whole, and that those who fail or refuse to appeal, will, nevertheless, be bound by the final judgment, except as to damages. And to show that this is the meaning of the Act, reference is made to two clauses thereof, namely: that the whole record shall be taken up, and that damages shall be awarded only against the party appealing.

We do not think either or both of these provisions conclusive upon the point. "*The whole record shall be taken up.*" Of course, whether the appeal be entered by *all* the parties, or any one or more of them, the appellate tribunal could not and would not act upon a partial record. This very case was

appealed from the Inferior to the Superior Court. It was in-
dispensable, therefore, that the whole record be sent up. The
entire transcript of the proceedings below should be trans-
mitted to the higher Court. We repeat, the argument de-
duced from this requsition is by no means conclusive. In-
deed, we must say, that to our mind, it reflects no light upon
the question.

Again, as to the damages: It is triumphantly asked, why
restrict the recovery of damages to the party appealing, if the
rest were dropped upon the appeal? Our response is this:
nothing is more common in our legislation than these super-
erogatory provisions. They are inserted, *ex cantela*, to sup-
ply some supposed deficiency—to make assurance doubly sure.
In proof of this, we refer to another portion of this same
Statute. In the second section, it was declared that damages,
for a frivolous appeal, should only be recovered against the
party or parties appealing, and their securities; and yet, in
the very next section, it is declared that securities who shall
be compelled to pay off the debt or damages, shall have re-
course only against the party or parties for whom he, she
or they became security or securities. Now, of course, the
party failing or refusing to appeal, gave no security, and no
damages could be assessed against such. How then could a
security, who paid damages, have recourse over against one
who was not, by the express terms of the Act, liable for them?
This restriction, like the other, was inserted out of abundant
caution, and is, in fact, supererogatory and suppletory. And
yet, this additional section was inserted at the instance of Mr.
Miller, one of the first Jurists of the State, by way of amend-
ment to the bill, as it was reported to the Senate from the
House of Representatives, in which it originated. (*See Jour-
nal of the Senate of 1839, page 335, 336.*)

But an attempt is made to draw an analogy from the writ
of error, in which one may take out a writ of error in the
name of all. In my humble judgment, the analogy cuts the
other way. It is true that one of several parties, cannot
prosecute a writ of error alone. And in analogy to this prac-

tice, the Courts in Georgia generally held, before the Act of 1839 was passed, that one of several parties could not appeal alone. It is also true, that in England one might take out a writ of error in the name of all. But what then ? Were the co-plaintiffs in error compelled to continue the litigation, willingly or unwillingly ? By no means. If the others refused to join in the prosecution of the writ, they might be summoned to the Court of error and sever; or what is more customary in the Courts of this country, if they made default of appearance, or moved to withdraw, an entry thereof is made on the record, after which he who sued out the writ may go on alone.

But here, it will be perceived, that a means of escape is furnished for those who are content to abide by the judgment already rendered. Not so, however, under the interpretation now sought to be put upon the Act of 1839. And thus, the principle of the analogy not only fails, but operates the other way. And still more strongly, when viewed in another aspect, and applied to the case at bar. All the authorities agree, that only those against whom judgment passes, can have error. If, for instance, there be five defendants, three of whom are acquitted, error must be by the two only who are convicted. Now, while it is true that the judgment in this case was joint, as against Wooten & Kirkpatrick; still, it is apparent that, upon the reasoning upon which the foregoing principle is sustained, it must be looked upon as a separate judgment against Kirkpatrick only. Wooten never disputed his liability. He set up no defence. The only plea put in was by Kirkpatrick, which was a denial of the partnership. He was convicted, and he alone appealed. And I doubt not but that he alone might have prosecuted his writ of error in the case. Substantially then, at least, and for the purpose of testing the legality of this testimony, it seems to me that Wooten should be considered as being severed from his co-defendant upon the appeal.

Again, it is contended that it is right, in itself, that all the parties should be bound by the verdict on the appeal, whether

Wooten & Co. *vs.* Nall.

they desired to litigate further · or not.   The only reply I have to ·make to this suggestion is, that even my *judicial* republicanism is too radical and stubborn to hold, that one of a half-dozen plaintiffs or defendant should control, at his option, the rest of his associates.   Better, rather, that no appeal be allowed, unless at the instance of *all*, or at least, a *majority* of the parties, than granted upon such unequal terms.

Further, and finally, it is said, that this is an easy working rule ; and one which frees the law, from all the perplexities which any new construction involves.   Simplicity and practicability in a rule of construction are highly commendable, provided those qualities be not exalted above and preferred to right and justice.   The edict of the despot, and the ukase of the autocrat, possess these qualities in an eminent degree—"Do this or die."   How simple and practical! and yet, how greatly preferable, the checks and balances of our federative system, complicated though it may be!   Who would hesitate to choose between the simplicity of the arbitrary rules of the Common Law, the code of a comparatively rude and barbarous people, and the complexity of the Civil Law, which very complexity was the result of a much higher civilization; and as one of the fruits and proofs thereof, an extreme anxiety to mete out to every litigant the exact measure of justice in questions of *meum* and *teum*.   Compare the *sic jubeo* simplicity of Lord Jefferies' administration of the law, with that of the doubting, and *doubting*, because profoundly learned, and conscientious Lord Eldon, and how striking the contrast!

Concede to them all that is claimed for the construction which I am combatting, namely : that it establishes a simple and easy working rule, still, the inquiry recurs:   Is it reasonable?   Is it right?   On the contrary, in the language of my brother WARNER, in *Allison and Chaffin*, is it not better "to regulate the rights of the parties according to their own action in the matter?   And where one of the parties, either a joint plaintiff or defendant, is *satisfied* with the first verdict, and is

unwilling to litigate farther, let the first verdict, as to him, be *conclusive*, as to *his* rights; and so, with the party who is *dissatisfied*, and desires to litigate his rights on the appeal." And if there be obstacles in giving this construction to the Act, as it now stands, let the Legislature so modify or alter it as will prevent all practical inconvenience, and secure the ends of justice.

The author of *Hotchkiss' Digest*, a work examined and approved, as having been "*faithfully executed*," by Wm. T. Gould, Robert M. Charlton and Carleton B. Cole, Esquires, and adopted by the Legislature—a most admirable book, by . the way, notwithstanding all the flings which have been made at it—considers the parties as "*severed*" by the appeal. (*Page* 601.) And such, I have no doubt, is the fact, whatever may have been the legal effects of such severance.

But admitting that Wooten occupies the same relation, only, toward this case, by not appealing, as he would do had he suffered judgment to go against him by default; still, we maintain that he is a competent witness.

The Court below refused to permit Wooten to testify, upon the ground that he was a party to the suit upon the record. And the question is then presented, whether the mere fact that the name of a witness appears as a party upon the record, is sufficient, even though it should appear affirmatively, that he has no interest in the event of the suit to exclude him. And the question is one, in respect to which different Courts have entertained different opinions. But I trust I shall be pardoned for saying, that as for myself, I not only consider the argument without force, but hardly deserving the credit of being plausible, which would exclude such testimony; and I make this declaration in the face of the uniform adjudications in the Supreme Court of the United States to the contrary; and before which Court it is no longer considered an open question. It is true, that Court admits, that in *all* the cases in which the question had arisen, the party was liable for cost of suit; and therefore, interested; still, they say that the exclusion has been uniform and placed on the ground of

policy; (5 *Howard,* 91;) a policy which is undefined—undefinable—intangible and imaginative.

In *Safford vs. Lawrence,* (6 *Barbour's S. C. Rep.* 566,) this whole doctrine is ably and thoroughly reviewed; and it is impossible to read that masterly opinion and doubt that a party to the record is a competent witness, provided he be disinterested. ' And that interest, alone, and not any conjectural policy, is the sole test of competency. The admission or rejection of the witness depends upon the result of this inquiry.

If this be the well established *English* rule, as is shown in *Worrall vs. Jones,* (7 *Brougham,* 379,) where Chief Justice *Tindal* declared—"that no case could be found in which a witness has been refused, upon the ground, in the abstract, that he was a party to the suit," how much more should it be enforced in this State, where we are not obliged to go into Chancery to procure the testimony of a party, but where *parties to the record,* plaintiffs and defendants, are examined upon the stand, *at Law,* just as other witnesses are; and where they are compelled to testify when called, even against their interest?

Upon this subject, no member of this Court, I believe, has any difficulty. At any rate, I can speak for myself.

But we now approach the exact point of divergence; for notwithstanding the contrariety of opinion as to the proper interpretation of the Act of 1839; still, could we have harmonized as to what would have been the result of a verdict in favor of Kirkpatrick, the judgment of the Court would have been unanimous.

The position occupied by Counsel for the defendant in error is, that one of two defendants in an action *ex contractu,* who had been defaulted, is not a competent witness for the other, because a verdict in favor of the other, placed the plaintiff in a situation in which he could not avail himself of the default; and consequently, the defendant who was thus defaulted, had, of course, an interest to testify in favor of his co-defendant.

To apply the principle to the case under discussion. Wooten, by not appealing, may be viewed as suffering judgment by default; indeed, he never did appear and plead to the action; still, he was not a competent witness, for Kirkpatrick, because, by defeating the suit as to Kirkpatrick, the action being joint, it would abate as to both, and must be renewed separately against him, before a recovery could be had, not denying but that he would be ultimately liable for the debt. or damages.

[6.] We do not dispute that this is true at Common Law :: That the general rule is, that where an action is brought against two defendants upon a joint contract, that in such case, judgment cannot be given against one defendant without the other. (1 *Chitt. Pl.* 31. 1 *East.* 48. *Sheriff et al. vs. Wilks.*) And that under the operation of this rule, Wooten might possibly be excluded.

[7.] But taking the whole tenor of our legislation upon this and kindred subjects, should an action abate or be quashed, on account of the improper joinder of defendants in this State? We are clear, that it should not; but that the same should proceed against the other defendant or defendants, and be prosecuted to final judgment and execution, in the same way and manner as if the defendant or defendants, found not liable and discharged, had not been originally joined in the suit.

Take the second section of the Act of 1850, which provides, that " in suits by or against partners, or when any two or more persons sue or are sued in the same action, and the name of any person, who ought to be joined in such action, as plaintiff or defendant, is omitted—on ascertaining the same the omission shall be amended instanter." . (*Cobb's Digest;* 493.)

Should any Georgia Court hesitate a moment to construe this Statute as applying to the converse of the case therein specified? What! clothe the Courts with authority to add a *new* defendant *instanter*, and not allow them to prosecute the suit against one or more, against whom a good cause of ac--

Wooten & Co vs. Nall.

tion was *confessed*, by the party himself to exist, because the plaintiff had failed to sustain the action against all the defendants ! The misfortune with us, always, has been to interpret our Statutes in the light of the grotesque forms, metaphysical subtleties, narrow rules and fanciful niceties of the Common Law, as it was a century ago. The further we get from it, the better for ourselves. The Legislature have been struggling, constantly, to unfetter our people from the shackles which bind them to the *effete* institutions of a bygone age, that the citizens of our State may advance with a free and unimpeded step towards perfection. Statute after Statute is passed to pare off the excrescences of Saxon and Norman Jurisprudence. The liberality of our Courts should keep pace with this spirit of reform. We should just as soon approach, with costly offerings, the infernal deities of our druidical ancestors, *Thor* and *Woden*, to be taught religion, as to the genii of the old Common Law, to learn the correct exposition of our modern laws. We must look to the experience of our own times—the lights of our own age. We should assert our own independent judgment, and act and think for ourselves.

But suppose the Act of 1850 does not warrant us in rendering judgment against one or more of the defendants, when the action cannot be maintained against all; and that our whole Code is powerless for this purpose; can there be a doubt upon this point, under the pleading and practice Act of 1853–'4 ? The first section declares: " that plaintiffs and defendants, in the Superior, Inferior and Corporation Courts in this State, whether at Law or in Equity, may, at *any* stage of the cause, as matter of right, amend their pleadings in *all* respects, whether in matter of form or matter of substance only," &c. (*Pamphlet*, 48.)

Can it be possible that a plaintiff, under the ample provisions of this Statute, shall be subjected to the loss of his suit, founded on contract, because he has failed to sustain his action against all the defendants? Will not the Courts, of

course, allow him to amend his writ by striking out the name or names of those who are not liable, and proceed to take judgment as to the rest ? Indeed, this practice will, we apprehend, be considered, now, as a matter of course, without any formal application to the Court and leave obtained for that purpose.

The technical difficulty, then, does not exist. And there-can be no objection why a party to the record, who has been-defaulted, or against whom a verdict has been rendered, and no appeal entered, and consenting to be called, should not be admitted as a witness for other defendants, provided he be-disinterested. Indeed, under the Act of 1847, to compel dis-coveries at Common Law, and subsequent Statutes amendatory thereto, I would not hesitate to force such a party to tes-tify, without his consent, and against his interest, provided his co-defendant was willing to risk him.

For the above reasons, we think the Court below erred, and that the judgment must be reversed.

STARNES, J.—concurring.

The difficulty in giving effect to the Act of 1839, author-izing one of several parties against whom a verdict has been rendered, to appeal alone, arises out of the fact, that that Act does not go far enough in its provisions to avoid the ob-stacles, which, without further explanation, present them-selves in the way of carrying these provisions into effect. Still, it is the law; and to my mind, it authorizes one of several defendants, against whom a verdict has been render-ed, and who does not wish to appeal, to avoid further litiga-tion, and to rest satisfied with and submit to the verdict, not-withstanding an appeal by his co-defendant, in such explicit

terms as to amount to a clear legislative direction to this effect, whatever else may be obscure, and whatever may be the inconvenience arising from such a state of things, in the event of certain contingences afterwards happening, in the progress of the cause against the party appealing.

The provision, that "the whole record shall be taken up," does not affect this view of the matter; for this provision would have been proper, though it were intended to provide that the case should exist only as to the party appealing.

Neither is the restriction of damages to the party appealing conclusive on the subject. As has been so well suggested by my brother LUMPKIN, such supererogatory provisions, inserted for purposes of abundant caution, abound in our legislation; and, it may be added, indeed, in the legislation of all civilized countries.

The effort to show an analogy between the situation of the parties to such a proceeding, and to a proceeding upon a writ of error, at Common Law, is not satisfactory; because, though it serves to show what the law might be without the Statute, it does not show what the law is with the Statute. On the contrary, as it appears to me, the Statute places the party not appealing, from the moment the appeal is entered by the party appealing, precisely in the category of one of several parties to a writ of error, who withdraws after the case is carried up to the Court of Error.

So, too, as I construe the Act of 1839, the analogy must fail, which is derived from the position of a co-defendant, in an action upon a joint contract at Common Law, against whom judgment has gone by default.

It is true, that at Common Law, a verdict and judgment in favor of the other defendant would relieve the defaulting party; (because judgment could not be given against one joint contractor without the other;) and therefore, it is always to his interest to testify in favor of the defendant litigating. But our legislation has changed this rule, certainly so far as it may apply to the case of a defendant not appealing; and

therefore, such a party need not be interested to testify in favor of the defendant continuing litigation.

I admit, as I have said, that some of the intrinsic difficulties which have been suggested by my brother, dissenting from the judgment of the Court in this case, do exist; but they arise from the action of the Legislature, and to the attention of that body we should commend them.

If any thing which I have here expressed conflicts with the opinion of the Court, in a case decided at the last term of this Court, held in Milledgeville, I desire to say, that I gave my consent to that judgment very reluctantly; that I have continued to doubt its correctness; and I fear that the hardships of that particular case influenced the Court in its judgment then delivered.

We all agree, I believe, in the opinion, that the mere fact that Wooten is a party to the record, does not disqualify him as a witness; and therefore, I shall say nothing on that subject, as the reasons for our opinion, on this point, are fully stated by my brother LUMPKIN.

BENNING, J.—dissenting.

I dissent from the judgment of the Court on one point in this case—the point as to Wooten's competency to be sworn as a witness for his partner, Kirkpatrick. The judgment of the Court is, that Wooten was a person competent to be so sworn. I think he was not.

The suit was against Wooten & Kirkpatrick. The plaintiff got a verdict against both defendants. From that verdict, one of the defendants only, Kirkpatrick, appealed. On the appeal trial, Kirkpatrick offered to examine Wooten as a witness. The Court below would not allow it. That decision,

:as a majority of this Court think, was wrong; as I think, it was right. I am now to state why I think so.

In my opinion, Wooten, although he did not, himself, enter any appeal, was yet a party on the appeal. The legal effect of Kirkpatrick's entry of an appeal was, in my opinion, to make both himself and Wooten appellants. And if they were both appellants, one could not be a witness for the other. That is a proposition which nobody disputes.

Were they both appellants? Is it the legal effect of an appeal entered by one of two or more plaintiffs, or one of two or more defendants, that his co-plaintiffs or co-defendants become equally, with himself, appellants? I say it is. I say that this effect is produced by the Act of 1839, "to explain and amend the Judiciary Act of 1799, so far as concerns the granting of appeals in certain cases." That Act is in the following words: " *Whereas*, a contrariety of opinion exists among the Judges of this State, and a different practice prevails in the different Judicial Circuits thereof, touching the granting of appeals under certain circumstances, for remedy whereof—

" SEC. I. *Be it enacted*, that from and after the passage of this Act, it shall and may be lawful, whenever there shall be more than one party plaintiff or defendant, and one or more of said parties, plaintiff or defendant, desire to appeal, and the other or others refuse or fail to appeal, it shall and may be lawful for any party, plaintiff or defendant, to enter his appeal, under such circumstances as are now provided by law.

" SEC. II. Upon the appeal either of the plaintiff or defendant, as aforesaid, the whole record shall be taken up; but in case damages shall or may be awarded upon such appeal, such damages shall only be recovered against the party or parties appealing, and their securities, and not against the party or parties failing or refusing to appeal.

· SEC. III. In case any such security or securities shall be compelled to pay off the debt or damages for which judgment may be entered in any cause, he, she or they shall have re-

course only against the party or parties for whom he, she or they became security or securities."

Sec. IV. (Repealing clause.) (*Cobb's Dig.* 500.)

"The *whole record* shall be taken up." What does that mean? It means, that the *whole case* shall be taken up. What else can it mean? The expression has reference to the *case*—not to the mere *record* of the case. It means, that not merely a part of the case, but that the whole of the case, shall be taken up. But if the whole of the case is to be taken up, then, of necessity, every party to the case has to be taken up; and one party to it just as much as another. And if all the parties are taken up, all are parties on the appeal; else, they are parties nowhere. They certainly are no longer parties below. With equal certainty, they are parties "taken up." To what place are they taken up? To the place of the appeal. There is no other place to take them to.

And if the effect of taking a case up be to vacate the judgment below, as to one party, it must also be to vacate the judgment as to the other parties. When the cause is the same, the effect must be the same.

So, if the effect of taking a case up be to subject one party to the judgment above, it must also be to subject all the parties to that judgment. The case is taken up, equally as to all.

All this seems to me the necessary result, from the plain import of the words—" the whole record shall be taken up."

But if I had a doubt as to the import of these words, that doubt would, as I think, have to yield to two implications contained in the Statute: 1. " But in case damages shall or may be awarded upon such appeal, such damages shall only be recovered against the party or parties appealing and their securities, and not against the party or parties failing or refusing to appeal." What reason was there for this provision, if the case, as to the parties not appealing, was not to be on the appeal? What use is there in saying that the damages shall not be recovered against one who is not in Court—not before Court or Jury? But if one is in Court—is before

Court and Jury, and there as an appellant against his will, there is good use—most excellent use—in saying this.    One so situated ought not to be made to pay the damages due for a frivolous appeal.    The strong implication, then, from the above language is, that by the act of appeal of one out of two or more plaintiffs or defendants, the case is put upon the appeal, as to all.

2.  A similar implication, and one of equal strength, is contained in the third section.    Why restrict the recourse of the sureties on the appeal to the party for whom they became sureties, if that party was to be the only party on the appeal?  Can there be a reason for it?  Whereas, if the intention was, that there were to be other parties on the appeal—parties carried there against their will, by their fellow-parties, there is good reason for the restriction.    The implication, then, must be, that there were to be such other parties on the appeal.

I insist, then, that according to what this Act says three times, once expressly and twice impliedly, the effect of an appeal entered by one of two or more parties on the same side, is to place the whole case on the appeal, and to make all of the parties on that side appellants.

And here I might stop; for is there any thing which a Court can even notice, if that thing be in opposition to the language of the Legislature?

But I will go on a little longer, in the endeavor to show that this, my argument, from the "words" of the Act, is sustained by the argument, from "effect and consequences."

1.  Unless the conclusion I have come to is the true one, the Statute is, as it seems to me, without any effect whatever. If we say that when one only out of two or more plaintiffs or two or more defendants appeals, one only gets upon the appeal, what effect do we give to the Statute?    Could we have said aught but this; or, at least, less than this, if the Statute had never been passed?

2.  How will the opposite conclusion work?    That conclusion is, that if one only out of more than one plaintiff or de-

fendant appeals, the effect is, that as to him, the case is on the appeal, not as to his fellows; that is, that the case is severed into two parts, one of which exists on the appeal—the other, somewhere else. Now how can a case in that situation—a case, two in one, one in two, be worked out to any harmonious result? Suppose a case in which one only of two *plaintiffs, joint promisees,* and say from a verdict for $500 in favor of both, and that on the appeal the verdict is for $1000. In such a case, what is it that the defendant is to pay? There are two judgments against him—one in favor of one of the several plaintiffs—the other in favor of the other; and these may be in different Courts—one in the Superior, the other in the Inferior. Is the defendant to pay both judgments? Is he to pay the whole of the judgment on the appeal, and none of the other? If so why, both judgments being good alike? And if so, in what proportion is the money, the $1000, to be divided between the two several plaintiffs—plaintiffs who are joint promisees—one admitting, by not appealing, that the joint promise entitled the joint promisees to only $500; the other, by appealing and getting a verdict for $1000, denying this and insisting that the joint promise entitles the joint promisees to $1000. But with what propriety could the *defendant* be forced to pay more than the $500, that being as much as one of his joint creditors claimed of him; that is, if the admission of one of two joint creditors is good against the other?

But suppose the result of the appeal trial, in the case assumed, be the reverse; suppose the verdict on the appeal, instead of being in favor of the plaintiff, and for $1000, should be for the defendant; is that plaintiff, who does not appeal, to lose his judgment for the $500? If he is not, who is to pay it to him? not the defendant; the final trial shows that the defendant owes nothing—the plaintiff by whose fault, in appealing, he lost the judgment for the $500? That plaintiff had the right to appeal.

The consequences will be equally incongruous, if we take the case of an appeal entered by one only of several *defend-*

*ants.* Suppose of two defendants, joint promissors, one only enters an appeal from, say a verdict for $500, and that on the appeal, there is a verdict for $1000; are both verdicts to be enforced? If not, which is to be, and why that one rather than the other? And of what is to be paid, whatever it is, what is to be the proportion paid by each defendant?

And then, what will be the form of the execution in either of the supposed cases, say the first verdict was in the Inferior Court? What parties will the Clerk of the Superior Court put in the execution? Can he put in the execution parties not in his Court? And none but the parties appealing would be in his Court, if the Statute means what a majority of this Court think it does; for if the other parties be in his Court, where, in the Court, would they be? Not on the appeal; still less any where else. And yet, those other parties ought, somehow, to be in the execution. And what must the execution command the Sheriff to do? Which judgment must it command him to execute? How much money must it command him to raise? Or is one execution to go from the Superior Court, and one from the Inferior? If so, how is the Sheriff to escape executing both?

I see no solution to the many difficulties that must grow out of such an interpretation of the Statute as this of the majority of the Court.

On the other hand, no difficulties will grow out of the practical working of the Statute, interpreted as I think it should be. If so interpreted, appeals under it will be like ordinary appeals—appeals in which all the parties on the appealing side join.

And in permitting one of two plaintiffs, or of two defendants, to put the case on the appeal as to both, without the consent, or even against the consent, of the other, I see nothing unjust—nothing discountenanced by analogy—rather, I see something which possesses, I think, a preponderating utility.

The acknowledgment or the release of one of two or

more joint promissors or partners, binds the others, whether they consent to the acknowledgement or release or not.

And the power to make such acknowledgements and re-- leases, is a far higher power than the power in question.  Even if one of two parties appeals against the consent of the other, and forces the other to go with him, the chances are, at least even, that the other will not suffer by it—that the verdict on the appeal will be no worse than the verdict below.

In most cases, however, the party not joining in the appeal. is passive—is indifferent whether there be an appeal or not.. He is a surety or a hopeless insolvent, or something that makes him indifferent as to what becomes of the case.  What great harm can there be in letting his fellow carry such a party with him on the appeal ?   Why compel such a party to be at the trouble of joining in the appeal?   And if one who is a surety, omit, by carelessness, to join his principal in an appeal, and on the appeal, the principal gets off clear, how hard it would be to make the surety pay the verdict below?  For in such a case, he would have no contribution from his principal.   Would it not be better that he, too, were considered to be on the appeal, that he might go clear with his principal? The plaintiff, it is true, might lose the verdict below ; but then he ought to lose it.   And may we not safely say that a plaintiff ought to lose the verdict below, in every case in which he is defeated on the appeal trial, even although all of the defendants may not have appealed from the verdict ?

Is it to be said, that if the party that appeals gets off upon the appeal trial, the party that does not appeal cannot complain if he is made to pay the verdict below ?   Is it to be said, that his not appealing is evidence that he is satisfied with the verdict?   But can this, in fairness, be said ?   What verdict is it with which the party not appealing is satisfied ? It is a verdict against him and *another or others, jointly ;* a verdict, therefore, the weight of which another or others are to bear equally with him ; a verdict, the weight of which, if he is a surety only, another or others are exclusively to bear.   This is the verdict with which he is content.   But this

verdict becomes a very different sort of thing; if, when the other party or parties have appealed from it, it remains in force against him alone. And his having been satisfied with the verdict, as it was when it was rendered, is no evidence that he is satisfied with the verdict as it is, after it has undergone this metamorphosis.