BURSON, administrator, *et al. v.* SHIELDS.

1. A levy must plainly describe the property levied upon.  Civil Code, § 6026. . A levy on land which fails to describe it with such precision as to inform the purchaser of what he is buying, and to enable the officer selling it to place the purchaser in possession, is void.  *Whatley* v. *Newsom,* 10 *Ga.* 74; *Ansley* v. *Wilson,* 50 *Ga.* 418; *Few* v. *Walton,* 62 *Ga.* 447; *Brown* v. *Moughon,* 70 *Ga.* 756; *Collins* v. *Dixon,* 72 *Ga.* 475; *Brinson* v. *Lassiter,* 81 *Ga.* 41 (6 S. E. 468); *O'Kelley* v. *Gholston,* 89 *Ga.* 1 (15 S. E. 123) ; *Bird* v. *Burgsteiner,* 100 *Ga.* 486 (28 S. E. 219). . But a levy in contemplation of law is sufficient if it enables one to locate the property and to identify it when found.  *Wiggins* v. *Gillette,* 93 *Ga.* 20 (19 S. E. 86, 44 Am. St. R. 123) ; *Collins* v. *Boring,* 96 *Ga.* 360 (23 S. E. 401) ; *Hawkins* v. *Johnson,* 131 *Ga.* 347 (62 S. E. 285).

2. Where a levy on land is void for lack of proper description, the defect can not be cured by a proper description of. the land in the deed made by the sheriff in pursuance of the sale had under said levy, for the reason that the deed would not conform to the levy.    *Brown* v. *Moughon,* supra.

3. A .levy in these words, to wit: "Ga., Barrow County.  I have this day levied the within fi. fa. on the following described property, to wit: 70 acres, more or less, bounded by lands of John Hunter and Miles Hunter on the east, by Ware north, by river and W. Jack Jones, and west by lands of Miles Hunter, and south by lands of Miles Hunter. Levied on as the property of J. C. Shields, to satisfy the within fi. fa.," dated and signed by the sheriff, contains a sufficient description of the property levied upon.  This is especially true when the uncontradicted parol evidence shows the land levied upon can be identified from the description thereof in the levy.  *Stroud* v. *Moore,* 150 *Ga.* 656 (104 S. E. 633).

4. The purchaser at a sheriff's sale, who has no knowledge or notice of defects or irregularities in the sheriff's advertisement of it for sale, will be protected; and his title acquired at such sale will not be declared void on account of such defects or irregularities.  Civil Code (1910), § 6059; *Sullivan* v. *Hearnden,* 11 *Ga.* 294; *Brooks* v. *Rooney,* . Id. 423 (56 Am. D. 430) ; *Hendrick* v. *Davis,* 27 *Ga.* 167 (73 Am. D.

726); *Johnson* v. *Reese*, 28 *Ga.* 353 (73 Am. D. 757); *Conley* v. *Redwine*, 109 *Ga.* 640 (2) (35 S. E. 92, 77 Am. St. R. 398); *Gower* v. *New England Mortgage Co.*, 152 *Ga.* 822 (111 S. E. 422).

5. A deed will not be held void for uncertainty from the fact that the description in part is false or incorrect, if there are sufficient particulars given to enable the premises intended to be conveyed to be identified. *McCaskill* v. *Stearns*, 138 *Ga.* 123, 126 (74 S. E. 1032). So where there is an error or misdescription in a levy upon land, the same does not render the levy void, if, notwithstanding such error or misdescription, the land can be readily identified. *Boggess* v. *Lowrey*, 78 *Ga.* 529 (3 S. E. 771, 6 Am. St. R. 279). In such a case, such error or misdescription may be rejected as surplusage, under the maxim falsa demonstratio non nocet. *Johnson* v. *McKay*, 119 *Ga.* 196 (45 S. E. 992, 100 Am. St. R. 166). In the entry of levy, in the advertisement, and in the sheriff's deed the boundaries of the premises on the east, the north and the south are the same. In the entry of levy the premises are bounded "by river and W. Jack Jones," without giving the point of the compass. In the advertisement and in the sheriff's deed "river" as a boundary is left out. In the entry of levy the premises are bounded west "by lands of Miles Hunter." In the advertisement and in the sheriff's deed they are bounded "by W. Jack Jones on the west." These discrepancies as to the western boundary can be rejected as surplusage, as under the uncontradicted parol evidence it appears that the land can be identified and located from the boundaries given in the levy and in the sheriff's deed. In the advertisement the land is described as being located in "Chandler's district." From the evidence of the plaintiff it appears that this land is located in the 1742 district G. M., of Barrow County, and its location is so described in the sheriff's deed. This misdescription of the district in the advertisement does not affect the title of the purchaser who took without notice thereof.

6. The fact that the sheriff's deed gives a fuller and more specific description of the premises than that embraced in the levy, there being no material conflict between the description therein and that embraced in the sheriff's deed, when viewed in the light of the parol evidence applying these descriptions, does not render the sheriff's deed void.

7 (2). Where a partnership as maker, and the individual members thereof as accommodation indorsers or sureties, were sued jointly upon a note made by the partnership and indorsed by such members, and where some of the accommodation indorsers or sureties filed pleas and answers, but no pleas and answers were filed by the firm and the other accommodation indorsers or sureties, in consequence of which the case was marked in default as to the partnership and the latter sureties, and where thereafter a verdict and judgment were rendered against the accommodation indorsers or sureties who filed no pleas or answers, but no verdict and judgment were rendered against the partnership, the judgment against such accommodation indorsers or sureties was not void, and not subject to collateral attack by one of the defendants in such judgment in an equitable petition brought by him to restrain the sheriff and

one claiming under a purchaser of his land under such judgment from interfering with his possession thereof.

(3). The court below erred in granting an interlocutory injunction.

No. 4901. July 16, 1925.

Injunction. Before Judge Stark. Barrow superior court. April 24, 1925.

J. C. Shields filed his petition for injunction and relief against Guy Thurmond and H. O. Camp, sheriff of Barrow County, and made these allegations: He is in possession of a tract of land in said county containing seventy-seven acres, more or less, being the place where Mutt Hunter, colored, lived and cultivated a crop during the year 1924. Said sheriff is interfering with his tenants on said place, and is endeavoring to put Thurmond in possession of the same, claiming that he sold said property under an execution against petitioner in favor of the Winder Banking Company. The levy on said execution was as follows: "Ga., Barrow Co. I have this day levied the within fi. fa. on the following described property, to wit: 70 acres, more or less, bounded by lands of John Hunter and Miles Hunter on the east, by Ware north, by river and W. Jack Jones, and west by lands of Miles Hunter, and south by lands of Miles Hunter. Levied on as the property of J. C. Shields, to satisfy the within fi. fa. This the second day of June, 1924. H. O. Camp, Sheriff." Said levy was absolutely void for uncertainty in the description, was not sufficient to identify the land, nor to divest the title or right of possession, nor to authorize the sheriff to put any one in possession of the same. Thurmond was put on notice and warned not to purchase said land before he invested a dollar in the same. The pretended sale of said land was made on the first Tuesday in July, 1924, and was alleged to have been bid off by B. J. Simpkins for the sum of $500, which was much less than its true value, and Thurmond claims to have purchased from Simpkins, but Simpkins was never put in possession of the land. Whether the sheriff attempted to sell the land of petitioner, described above, can not be determined by the description in the levy; but if he did, the levy and seizure are void. The fi. fa. is void, as shown in the proceedings on which it is based, the same being a suit by the Winder National Bank against the Oak Grove Gin Company, an alleged partnership composed of various partners, and indorsed by some of the partners. No plea

was filed by the Oak Grove Gin Company and some of the other indorsers and security. The plaintiff voluntarily took a verdict against some of the partners and some of the sureties, and no verdict against the partnership, which rendered the same void, and increased the risk of the others and released them. Shields prayed that the defendants be enjoined from interfering with or disturbing the tenants on said land, and that the sheriff be enjoined from putting Thurmond in possession.

The defendants demurred to the petition upon the ground that it sets forth no legal or equitable cause of action and does not show that petitioner is entitled to the equitable relief set forth, and that all the matters and things complained of by petitioner are such as could have been taken advantage of by proper legal proceedings, and that petitioner has a complete and adequate remedy at law. There were various special grounds of demurrer. In his answer Thurmond denies that plaintiff is in possession of the land in dispute, but alleges that he (Thurmond) is now and has been in possession since he purchased the land on July 18, 1924. He denies that the sheriff is endeavoring to put him in possession, and alleges that the sheriff put him in quiet, peaceable possession of the land on or about July 18, 1924, as the purchaser thereof, and that he has been and is now in possession thereof. He denies that the plaintiff had any tenants on said tract of land on January 1, 1925. He purchased said land from B. J. Simpkins on July 18, 1924, for a valuable consideration, which he paid, and at the same time or within a day or so thereafter the sheriff put him in possession thereof, and he has had possession ever since. He rented the land for the year 1925, and his tenant is being interfered with and prevented from moving on the land by a temporary restraining order granted January 1, 1925. Unless said order is rescinded the defendant will be seriously damaged. The sheriff's sale was regular in every particular; the verdict and judgment against plaintiff, upon which the execution issued, was regular, was duly levied on said land, notice of which was given to the plaintiff; said land was legally advertised for sale, and was duly sold to Simpkins as the highest and best bidder.

Upon the hearing of the application for injunction the following facts appeared: The Winder National Bank brought suit against Oak Grove Gin Company, a partnership composed of J. C.

Shields, R. H. Shields, E. H. Shields, L. L. Patrick, W. E. Young, J. L. Howell, T. N. Suddeth, H. M. Payne, J. C. Payne, T. K. Wilbanks, W. J. Jones, and G. W. Summerour, in Barrow superior court. The first four named partners were alleged to be residents of Jackson County, and the other partners were alleged to be residents of Barrow County. The suit was brought upon two notes of the Oak Grove Gin Company, payable to G. W. Summerour. Said notes were indorsed by the individual members of said partnership and by Summerour. A verdict was rendered against J. C. Shields, L. L. Patrick, W. Jack Jones, and T. N. Suddeth; on this verdict judgment was rendered against said defendants. The other partners to this suit filed answers, the contents of which are not set out in the record: Execution issued on said judgment, and the following entry of levy was made thereon: "Ga., Barrow County. I have this day levied the within fi. fa. on the following described property, to wit: 70 acres, more or less, bounded by lands of John Hunter and Miles Hunter on the east, by Ware north, by river and W. Jack Jones, and west by lands of Miles Hunter, and south by lands of Miles Hunter. Levied on as the property of J. C. Shields, to satisfy the within fi. fa. This the 2nd day of June, 1924. H. O. Camp, Sheriff." The sheriff's advertisement of the sale under said levy described the land as follows: "All that certain tract of land in Chandler's district G. M., containing seventy acres, more or less, with improvements thereon, bounded by lands of John Hunter and Miles Hunter on the east, by Ware on north, by W. Jack Jones on west, by Miles Hunter on south, said seventy acres being known as land sold by R. S. D. Lanier to Jim Cody. Levied on as the property of J. C. Shields, to satisfy an execution issued from the superior court of Barrow County, in favor of Winder National Bank against Oak Grove Gin Company, J. C. Shields, W. Jack Jones, L. L. Patrick, and T. N. Suddeth." To the introduction of each part of the foregoing record the defendant objected on the ground that each was irrelevant and immaterial. The court overruled these objections and admitted said evidence. To this ruling the defendants excepted.

The plaintiff deposed by affidavit, that the statements in his petition were true; that his land, the subject-matter of this suit, is situated in the 1742d district of Barrow County, which is known as Statham district; that the land advertised and sold by the sheriff

is described in the advertisement as being situated in Chandler's district, which is the 246th district of said county; that at the time of the sheriff's sale the market value of said land was at least $20 or $25 per acre; that he was not present at the sale; that he informed Thurmond before he purchased this land that he had better not have anything to do with it, that he could not get a title to the 77 acres described in his petition; that he rented his land before any judgment was obtained against him, and his tenants were in possession thereof when judgment was obtained in this case, and his tenants' crops thereon, at the time of the sale, were far advanced, and Thurmond was not put in possession of this land. J. S. Ayers deposed, that Thurmond asked him what he knew about the title to the land sold as the property of plaintiff on the first Tuesday in July, 1924, and purchased by Simpkins. He informed Thurmond that it was more than likely they would have a lawsuit about the land, and there was grave doubt about the title being good. The sworn petition of plaintiff was offered in evidence.

The defendants introduced in evidence their sworn answers. They also put in evidence the notice to Shields of the levy of said execution, which described the land levied on as follows: "70 acres land, more or less, bounded by lands of John Hunter and Miles Hunter on east, by Ware north, by river and W. Jack Jones, west by lands of Miles Hunter, south by lands of Miles Hunter. Said 70 acres known as the land bought by Lanier from Jim Cody, as your property." They introduced the sheriff's deed to Simpkins, in which this land was described as follows: "All that certain tract of land in the 1742 district G. M., in Barrow County, Georgia, containing seventy (70) acres, more or less, with improvements thereon, bounded by lands of John Hunter and Miles Hunter on east, by lands of Ware on north, by lands of W. Jack Jones on west and by lands of Miles Hunter on the south. Said seventy acres of land being known as the lands sold by R. L. D. Lanier to Jim Cody, colored, and covered by deed from the executors of will of R. L. D. Lanier to J. C. Shields, and generally known as the Jim Cody place." They introduced the deed from Simpkins to Thurmond, dated July 18, 1924, for a consideration of $725, in which the land is described as it is in the above sheriff's deed.

Thurmond deposed that he knew nothing whatever of any alleged defects in any of the proceedings against J. C. Shields, out of which the execution levied upon the land in question issued, and had no notice whatever of the same. He never saw the advertisement of the land, under which it was sold, until long since the sale thereof, and since the filing of the present suit, and knew nothing of any defects in the advertisement or levy. He averred that the levy and advertisement were amply sufficient to identify the land in question. Before buying the land he saw and read a letter from Shields to Simpkins, in which Shields stated that he wanted to buy said land from Simpkins. Thereafter he went to see Shields and talked to him about this land. He asked Shields if there was anything wrong about the sale of the land; and Shields told him that he was never served with a copy of the suit against him, that he (Shields) would just as soon deponent would buy the land as anybody else,—that if they could sell it without serving him, it was all right for deponent to buy it. This was the only talk deponent ever had with the plaintiff about the matter.

B. J. Simpkins deposed that he attended the sheriff's sale of this land on the first Tuesday in July, 1924. He knew nothing of any defects in the judgment, levy, and advertisement under which said land was sold. He sold said land to Thurmond for $750 on July 18, 1924, and delivered to him a quitclaim deed thereto.

G. R. Ross deposed in favor of the defendants that he was counsel for the plaintiff in the case of the Winder National Bank against J. C. Shields and others, in Barrow superior court. He pointed out the tract of land in question to the sheriff, to be levied on as the property of plaintiff. When Simpkins sold said land to Thurmond, deponent accompanied Thurmond and the sheriff to said land, and Thurmond was put in possession thereof by the sheriff, going over and around said land, pointing the same out to Thurmond, and notifying the tenants residing thereon of the fact that said land had been bought by Thurmond, and that he was putting Thurmond in possession thereof.

The court granted an interlocutory injunction. To this judgment the defendants excepted.

*H. H. Chandler*, for plaintiffs in error.

*Jere S. Ayers*, contra.

HINES, J. (After stating the foregoing facts.)

1. The first six headnotes require no elaboration.

2. As a general rule at common law, in an action against two defendants upon a joint contract, judgment can not be given against one defendant without the other. But this rule has been changed by statute in Georgia. If two or more defendants are sued upon a joint obligation, and it is made to appear on the trial that one or more are not liable and ought not to be joined in the action, the suit does not abate, but may proceed against the other defendant or defendants. *Wooten* v. *Nall,* 18 *Ga.* 609; *Francis* v. *Dickel,* 68 *Ga.* 255. So where two are sued as partners, the plaintiff may strike one of the defendants and obtain a judgment against the remaining sole defendant, provided the evidence shows a several liability on his part. *Doody 'Co.* v. *Jeffcoal,* 127 *Ga.* 301 (56 S. E. 421). So where three persons are sued as partners, and no partnership is established, the verdict may be against one only. *Austin* v. *Appling,* 88 *Ga.* 54 (5) (13 S. E. 955). "So where suit was brought against a firm composed of two members, and the jury found in favor of the plaintiff against one of the partners, a reasonable construction is to be given to the finding which will not avoid it except for necessity, and in so doing the verdict will be construed as finding in favor of the other partner." Sureties may be sued on promissory notes jointly or separately with the makers thereof. Civil Code (1910), § 3559; *McMillan* v. *Heard National Bank,* 19 *Ga. App.* 148 (91 S. E. 235); *Johnson* v. *Georgia Fertilizer &c. Co.,* 21 *Ga. App.* 530 (94 S. E. 850). This is so because the makers and sureties are joint and several obligors. *White* v. *Hart,* 35 *Ga.* 269; *Heard* v. *Tappan,* 116 *Ga.* 930 (43 S. E. 375). So where a partnership as maker, and the members of the partnership as sureties, are sued jointly upon a 'note, and where some of the sureties file pleas and answers, but the partnership and other sureties file no pleas and answers, in consequence of which the case is marked in default as to the partnership and such sureties, the rendition of a verdict and judgment against those sureties, without a verdict and judgment against the partnership eo nomine and the sureties who filed pleas and answers, does not render such judgment void. *Merritt* v. *Bagwell,* 70 *Ga.* 578; *Johnson* v. *Georgia Fertilizer &c. Co.,* supra.

In *Norris* v. *Pollard,* 75 *Ga.* 358, the principal and surety were

sued jointly. The principal filed pleas under oath. Judgment was rendered against the surety before the plea of his principal had been disposed of. This court stated, but did not decide, that it was "at least doubtful whether such judgment was not void under the constitution." This doubt was expressed upon the ground that the surety was liable for no greater amount than was found due from the principal. However, this court held that "The judgment was at least irregular." In *Campbell* v. *Bowen,* 49 *Ga.* 417, the suit was against partners jointly, and verdict was rendered against one only. This court held that under the evidence the verdict should have been rendered against both. On direct and timely exception the judgment of the lower court was reversed. In *Powell* v. *Davis,* 60 *Ga.* 70, a plaintiff, holding a joint judgment against two, for a valuable consideration released one of them. This court held that this release discharged the other joint defendant. In *Howes* v. *Patterson,* 76 *Ga.* 689, this court held that a suit against a partnership could not be turned into one against an individual, and that there was no error in refusing to allow a judgment against the individual. But the ruling in this case was questioned in *Doody Co.* v. *Jeffcoat,* supra. When a joint action is brought against the principal and surety as joint and several obligors upon a note, the plaintiff can dismiss as to the principal and proceed alone against the surety. *Brooks* v. *Thrasher,* 116 *Ga.* 62 (42 S. E. 473); *McMillan* v. *Heard National Bank,* supra. Besides, the parties against whom judgment was rendered, being alleged partners of the firm sued, are both principals and sureties; and therefore they are not hurt by reason of the failure of the plaintiff to take judgment against the partnership as such. The case is still apparently pending against the other partners, both as principals and sureties upon the notes sued upon. Whether judgment can still be had against them, if the defenses set out in their pleas and answers are not sustained, is not now for decision by this court.

At most, the rendition of a verdict against the defendants, against whom default judgment had previously been rendered, was an irregularity; and such judgment can not be impeached collaterally in equity. *Redwine* v. *Brown,* 10 *Ga.* 311. A direct proceeding to set aside such judgment must be had. *Kelsey* v. *Wiley,* Id. 371; *Dunagan* v. *Stadler,* 101 *Ga.* 479 (29 S. E. 440).

This is especially true after one of the defendants in such a judgment has acquiesced therein, permitted his property to be sold under such judgment without objection, and a bona fide purchaser has acquired title thereto.

3. Applying the rulings above, the court did not err in admitting in evidence the proceedings in the suit in which the judgment was obtained under which the plaintiff's land was sold; but did err in granting an interlocutory injunction.

*Judgment reversed. All the Justices concur.*