## BAUGH *v.* CITY OF LaGRANGE.

1. The caption of an act is: "An act to create a new charter for the City of LaGrange in the County of Troup." Acts 1901, p. 477. Section 42 of the act contains provisions authorizing the mayor and council in their discretion to grade, pave, macadamize, and otherwise improve the travel and drainage of the sidewalks, streets, squares, public lanes and alleys of the city, and prescribes methods of procedure by which such powers shall be exercised. *Held*, that section 42 of the act is not void as being violative of paragraph 8 of section 7 of article 3 of the constitution of this State (Civil Code, § 6437), which provides that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," on the ground that there is nothing expressed in the title of the act which authorizes the legislature to enact the provisions of that section of the act.

2. Section 42 of the act includes conference of authority upon the city' to pave streets and sidewalks and assess the cost thereof in designated proportions against abutting real estate and street-railroads and other railroads occupying the streets to be paved, and authorizes the city "to adopt by ordinance such a system of equalizing assessments . . as may be just and proper" according to frontage on the street or area or the value of the property, either or all, as may be determined by ordinance, and provides that "the amount of the assessment on each piece of real estate shall be a lien on said real estate from the date of the passage of the ordinance providing for the work and making the assessment," and that all such assessments shall be enforcible by issuance of executions and levy and sale thereunder, and that the owner shall have the right by affidavit of illegality proceedings, as is provided by law in other cases, to deny the whole or any part of the amount for which the execution is issued. *Held*, that the above-quoted provision of the act, referring to creation of a lien, is not void as being violative of paragraph 3 of section 1 of article 1 of the constitution of this State (Civil Code, § 6359), which declares that "No person shall be deprived of life, liberty, or property, except by due process of law;" nor is such portion of the act void as being violative of that part of section or article 14 of the constitution of the United States (Civil Code, § 6700),

which provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws," on the ground that "it seeks to create a lien on . . property before any paving or improvement or any work is done or started or begun on said street or sidewalk, . . and without giving [the owner] an opportunity to be heard or to object to the filing of any lien on his said property, thereby depriving [the owner] of his property without due process of law."

(a) It is only in cases where laws are applied differently to different persons under the same or similar circumstances that the equal protection of the law is denied. *City of Valdosta* v. *Harris*, 156 *Ga.* 490 (4) (119 S. E. 625) ; *Georgia Southern & Florida Railway Co.* v. *Adkins*, 156 *Ga.* 826 (120 S. E. 610).

(b) The provision for a lien is not for final process and does not contemplate deprivation of the owner of his property without due process of law. He has his remedy, under the statute, by affidavit of illegality to contest liability and the amount of the assessment. Having such remedy before his property is finally taken, it affords him due process of law within the meaning of the State and Federal constitutions. *Arthur* v. *State*, 146 *Ga.* 827 (92 S. E. 637).

(c) The case differs on its facts from *Shippen Lumber Co.* v. *Elliott*, 134 *Ga.* 699 (68 S. E. 509), referring to the charter authority of a town to assess or raise the valuation of any unreturned property for the purpose of taxation, the charter of the town making no provision for affording a hearing to the taxpayer on the question as to the amount of the assessment.

3. Section 42 of the act conferred power upon the mayor and council "to prescribe by ordinance such other rules as they may, in their discretion, think necessary to grade, pave, drain, macadamize, or curb the streets, sidewalks, and alleys of said city, to enforce by execution the costs thereof against the adjacent property owner," and "to provide how the agents or owners thereof shall be served with notice by personal service or by publication." On April 16, 1921, the mayor and council in pursuance of the above authority passed a general paving ordinance which contained the provision: "Whenever the mayor and council ; . in their discretion . . shall from time to time contemplate the grading, paving, or macadamizing of any sidewalk, street [etc.], the mayor and council shall cause to be published . . in some newspaper of general circulation in said city at least one time [a specified notice] and notifying all parties having any interest [in the proposed improvement] to present their views or objections in - writing . . by filing the same with the clerk on or before a day to be named in the notice." On the day after the passage of the foregoing ordinance, the clerk of council caused to be published one time, in a newspaper having general circulation in the city, a notice declaring that the mayor and council contemplated the paving of designated streets, etc., and calling upon persons at interest to present any views or objections to the paving, etc., to be

6

filed with the city clerk on or before the 21st day of April, 1921. A certain person at interest did not have actual notice of the proposed action of council. No objection was filed by any one; and on April 25, 1921, an ordinance was passed for paving the particular street. The person who did not have actual notice of the proposed action of council having refused to pay an assessment against his property for the improvement, execution was issued against such property on December 1, 1921, for the amount of the assessment, which was levied October 6, 1923, on the property. An affidavit of illegality was duly filed to prevent enforcement of the execution. *Held:* Whether or not the city in the exercise of its power and discretion would make the particular improvement was a question legislative in character and not a judicial question; and being so, a hearing upon such question was not required by the due-process clauses of the State and Federal constitutions to be afforded to owners of property abutting on the streets proposed to be improved (*City of Valdosta* v. *Harris*, supra) ; and consequently the facts that only one advertisement was made of the notice, and that the property owner did not have actual notice, and that only seven days intervened between the date of the published notice and the passage of the ordinance providing for the improvement, did not render section 42 of the act or the above-mentioned ordinance void as being in violation of the due-process clauses of the State and Federal constitutions, or render enforcement of the execution unconstitutional for similar reasons; neither was enforcement of the execution violative of said provisions of the State and Federal constitutions on the grounds that the defendant was denied a hearing as to the amount of the cost of the improvement, and was denied the right of taking an appeal; and was denied the right to arbitrate. The statute afforded the defendant opportunity for a hearing on all such questions by affidavit of illegality.

4. Section 42 of the act of 1901, referred to in the preceding divisions, is a special law, and not a general law having operation throughout the State, and is not void as being violative of paragraph 1 of section 4 of article 1 of the constitution of this State (Civil Code, § 6391), which provides: "Laws of a general nature shall have uniform operation throughout the State. . . No general law affecting private rights shall be varied in any particular case by special legislation, except with the free consent, in writing, of all persons to be affected thereby." *City of Valdosta* v. *Harris*, supra.

5. The portion of said section 42, that "The amount of the assessment on each piece of real estate shall be a lien on said real estate from the date of the passage of the ordinance providing for the work and making the assessment," makes provision for a statutory lien to become operative against property that will be benefited by the improvement, when such particular property shall be designated and its proportionate part of the cost of the improvement shall be ascertained in a manner specified in the statute, and shown in the assessment. The provision in the special paving ordinance dated April 25, 1921, declaring that "The amount of the assessment of each piece of real estate shall be a lien on said real estate from the date of the passage of this ordinance," is not ultra vires (*City of Macon* v. *Anderson,* 155 *Ga.* 607 (3), 117 S. E. 753;

*City of Jackson* v. *Kinard,* 154 *Ga.* 692, 115 S. E. 69), in so far as it purports to create a lien; however it does not modify or limit the provision for a lien made by statute as quoted above from section 42 of the act of 1901, nor render illegal an execution issued for the amount of an assessment made in pursuance of the statute, and other provisions of the ordinance passed in pursuance of the statute.

6. Paragraph 3 in section 42 of the act includes the provision: "And any street-railroad company, or other railroad company having tracks running through or across the streets of said city, *shall be required* [italics ours] to pave, macadamize, or otherwise improve said streets in such proportion as the mayor and council may prescribe." Paragraph 7 in section 42 of the act includes the provision: "The mayor and council shall have authority to pave and contract to pave the whole surface of the street, without giving any railroad company, or other property holder or occupant of the street, the option of having the space to be paved by them paved by themselves, or by a contract at his or its instance, the object being to prevent delay and to secure uniformity." *Held:* It does not appear in this case that the city gave any street-railroad company or other railroad company the right to pave portions of the street and denied the same right to the defendant; and consequently it is not shown that the defendant would be injuriously affected by the statute, so as to authorize him to raise the question that the above-quoted provisions are discriminatory and class legislation and render the section 42 of the act unconstitutional. *Witherow* v. *Board of Drainage Commissioners,* ·155 *Ga.* 476 (4) (117 S. E. 329); Castillo *v.* McConnico, 168 U. S. 674, 680 (18 Sup. Ct. 229, 42 L. ed. 622); Straus *v.* Foxworth, 231 U. S. 162 (34 Sup. Ct. 42, 58 L. ed. 168); New Orleans *v.* New Orleans Waterworks Co., 142 U. S. 79 (12 Sup. Ct. 142, 35 L. ed. 943).

7. Applying the foregoing rulings to the pleadings and evidence contained in the agreed statement of facts, the judge did not err in sustaining the authority of the mayor and council to enact the ordinances, make the assessment, and issue the execution on the basis of the assessment; and in deciding against the illegality.

No. 4632.   September 17, 1925.

Affidavit of illegality of execution. Before Judge Roop. Troup superior court. October 25, 1924.

*Terrell & Terrell,* for plaintiff in error.

*L. B. Wyatt,* contra.

ATKINSON, J. An affidavit of illegality was interposed to the levy of an execution issued by the City of LaGrange for the amount of an assessment against abutting real estate for paving a street. The judge tried the case by consent of both parties, without a jury, upon an agreed statement of facts. A judgment was rendered against the illegality, and the defendant in execution excepted.

1. The first ground of the illegality raises the question of con-

stitutionality of the act upon which the assessment fi. fa. was predicated. The caption of the act approved December 16, 1901 (Acts 1901, p. 477), is: "An act to create a new charter for the City of LaGrange in the County of Troup." It is insisted that the whole act is void on the ground that it is violative of paragraph 8 of section 7 of article 3 of the constitution of this State (Civil Code of 1910, § 6437) which provides: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," because there is nothing expressed in the title of the act which authorizes the legislature to enact into law section 42 of the act or any part thereof; and because all of section 42 contains matter different from what is expressed in the title of the act; and because nothing is expressed in the title of the act which in any way refers to matters contained in section 42. It will appear from the provisions of section 42 that they all relate to the subject of authority of the city to grade, pave, and drain streets and sidewalks in the city, and prescribe the manner of accomplishing such purpose, under a plan of assessment and collection of the cost thereof from abutting property and railroads occupying the streets. By a comparison of the provisions of section 42 with the caption it will be perceived that the provisions of section 42 all relate to one general subject, and that that subject is sufficiently indicated by the general terms of the caption which is quoted above. The caption of the act approved December 16, 1895 (Acts 1895, p. 98), was: "An act to approve, adopt, and make of force the Code of laws prepared under the direction and by authority of the General Assembly, to provide for the printing and publication of the same, and for making indices thereto, and for other purposes." In *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (2, 4) (31 S. E. 531, 42 L. R. A. 518), it was held: "The intention of the act of December 16, 1895, adopting the present Code, and making the same of force, as the Code of Georgia, is to enact into one statute all the provisions embraced in that Code. . . The act in question does not, within the meaning of article 3, section 7, and paragraph 8, of the constitution of Georgia, refer to more than one subject-matter, nor does it contain matter different from what is expressed in the title thereof." In the second division of the opinion it was said: "Its [the code's] general object is to embody as near-

ly as practicable all the law of a State, from whatever source derived. When properly adopted by the lawmaking power of a State, it has the same effect as one general act of the legislature containing all the provisions embraced in the volume that is thus adopted. . . Whenever the legislature, . . employs such words as 'adopting a code,' no other legitimate or reasonable construction can be given the language itself than an intention to enact and make of force as a statute every provision in the entire work which it ·has under consideration." After stating the above, the opinion proceeded with consideration of the question of whether the purpose of the legislature was constitutionally declared. Referring to the above-quoted provisions of the constitution, it was said, in the fourth division of the opinion: "Its object, therefore, was not to prevent comprehensive, but surreptitious legislation. The other provision, that no bill shall contain more than one subject-matter, does not appear in the constitution of 1798, but has since become a part of our constitutional law. Its object was not so much to prevent surreptitious legislation, as to inhibit the passage of what is often termed 'omnibus' or 'log-rolling' bills. A bill may contain more than one subject, and yet, if its title clearly indicates all its subjects, it will not be apt to mislead the legislature as to its intent and scope, and can not, therefore, be considered surreptitious legislation. Experience, however, taught that it was often the case that many matters were embraced in the same bill, adverse in their nature and having no necessary connection, with the view of combining in their favor the advocates of all, and thus securing the passage of several measures no one of which could succeed upon its own merits. It was to prevent this dangerous practice that our organic law declares that a bill should contain but one subject-matter. An act, however, adopting a code, or a system of laws, obviously does not fall within any of the classes of mischiefs which this restriction in the constitution was intended to remedy. No one need be misled by a title to an act which declares that its purpose is to adopt a certain code, or system of laws; nor is there anything in such an act to occasion any alarm that it would pass contrary to the wishes of the people by virtue of improper combinations among members of the legislature. What the constitution looks to is unity of purpose. It does not mean by one subject-matter only such subjects as are so simple that they can

not be subdivided into topics; but it matters not how many subdivisions there may thus exist in a statute or how many different topics it may embrace, yet if they all can be included under one general comprehensive subject which can be clearly indicated by a comprehensive title, such matter can be constitutionally embodied in a single act of the legislature. On the other hand, should the legislature embody in one act two or more different subjects, however simple they may be, which have no relation or connection whatever one with the other, the constitution is violated. The following very apt illustration has been suggested to this court: 'You can, in one act, charter Greater New York, with its millions, and embrace therein an endless variety of legislation concerning Police, Streets, Wharves, Courts, Jails, Mayor, Council, Tax-Collecting, Tax-Assessing, Legislative and Executive functions, but you can not in the same act charter two small villages like High Shoals and Belton.' See *King* v. *Banks,* 61 *Ga.* 20."

See also *City of Cartersville* v. *McGinnis,* 142 *Ga.* 71 (2) (82 S. E. 487, Ann. Cas. 1915D, 1067), which is cited in 25 R. C. L. 845, § 91, in support of the following text: "Acts incorporating specific municipal corporations, creating new charters, or authorizing a classification of municipal corporations, afford, perhaps, the best illustration of the infinite variety of topics which may be included within one general subject. These acts usually provide not merely for the formation of corporations, but also for their powers and the powers of the various officers thereof, as well as penalties for violating provisions of the charter or general law, and embrace practically as wide a range as the code or the revised or compiled statutes of a State. Nevertheless, there is no need for mentioning these several matters in the title, for the reason that they do not constitute different subjects, and their enactment might reasonably be apprehended by any one knowing that the legislature proposed to authorize or provide for the government of the particular corporation or class of corporations in question." Applying the foregoing principles, it can not be said that the caption of the act was insufficient to authorize the provisions of section 42 of the act, or that the act under consideration was violative of the above-quoted provision of the constitution.

2-7. The rulings announced in the other headnotes do not require elaboration. *Judgment affirmed. All the Justices concur.*