BARBER *et al. v.* HOUSING AUTHORITY OF THE
CITY OF ROME.

156

No. 13034. October 27, 1939.

*Maddox & Griffin* and *Mrs. Charles Camp,* for plaintiffs.
*Leon & Dean Covington, Albert Fahy Jr.,* and *Wright & Willingham,* for defendant.

JENKINS, Justice. ■ Dealing first with the grounds of constitutional attack on the State housing laws under which the defendant, Housing Authority of the City of Rome, Georgia, has functioned—the "housing-authority law" of 1937 (Ga. L. 1937,

p. 210), and the act of 1939 amending this law (Ga. L. 1939, p. 112), this court, in *Williamson* v. *Housing Authority of Augusta*, 186 *Ga.* 673 (2, 3, 7), 677, 678, 688, 694 (supra) has held that the original act of 1937, which conferred upon each authority the power of eminent domain, is not in contravention of art. 3, sec. 7, par. 8, of the State constitution (Code, § 2-1808), as referring to more than one subject-matter, or as containing matter different from what is expressed in the title; and is not in contravention of the uniformity clause contained in art. 1, sec. 4, par. 1 (§ 2-401), as being a special law as to matters covered by general laws. That decision held the act of 1937 to be a general law, dealing with "a public purpose," and projects authorized by its provisions to be "for public purposes." The present contentions, repeating grounds of constitutional attack there made on the act of 1937, are therefore without merit.

(*a*) For the reasons stated in that decision as to the original act, the amendatory act of 1939 (Ga. L. 1939, pp. 112, 121), permitting the housing authorities to acquire, under sec. 7, a full *fee-simple* title to the condemned properties, instead of being controlled by the title restrictions applicable to municipalities and other corporations proceeding under the Code, title 36, was not a special law in contravention of art. 1, sec. 4, par. 1, of the constitution (Code, § 2-401). No question is raised or attack made as to the constitutional right of the General Assembly to enact a general law authorizing the acquirement of a fee-simple title by condemnation.

(*b*) The amendatory act of 1939 is attacked on the further ground that it violates art. 3, sec. 7, par. 17, of the constitution (Code, § 2-1817), precluding the amendment or repeal of any law or Code section "by mere reference to its title, or to the number of the section of the Code," and requiring a distinct description of the law to be amended or repealed and the alteration to be made. It has been held that this provision is "confined to repeals and amendments expressly made," and does not apply to changes made by "implication" (*Nolan* v. *Central Georgia Power Co.*, 134 *Ga.* 201 (3), 67 S. E. 656; *Swift* v. *Van Dyke*, 98 *Ga.* 725-727, 26 S. E. 59; *Durham* v. *State*, 166 *Ga.* 561, 144 S. E. 109) ; and that "an act which does not purport to amend or repeal any particular law or statute is not within [its] prohibition."

*Crisp* v. *Head,* 187 *Ga.* 20 (2), 24 (199 S. E. 219), and cit. Section 7 of the act of 1939 provides: "That whenever a housing authority is or has been created under the terms of said act of 1937 [the housing law], previously referred to; and whenever it is determined by the commissioners or other governing body of such authority to be necessary or advisable to exercise the power of eminent domain by condemning property; and whenever such condemnation proceedings are instituted and carried on under title 36, chapter 36-1 through chapter 36-6 of the Code of Georgia of 1933, or under title 36, chapter 36-11 of said Code, or under any amendments thereof, or through any other method of condemnation provided by law, that upon the payment by such authority seeking condemnation of the amount of the award and final judgment on appeal, such authority shall become vested with a fee-simple indefeasible title to the property to which such condemnation proceedings relate. It is hereby declared to be necessary, to enable such authorities to exercise their franchise, that upon such condemnation proceedings being had, that such housing authorities shall become vested with fee-simple indefeasible title to the property involved in such proceedings." The title of the act of 1939 refers to its amendatory provisions as "An act to amend an act entitled 'housing-authorities law' (Georgia Laws of 1937, pages 210-230) . . to provide that when condemnation proceedings are instituted and carried on by housing authorities under said act of 1937, upon the payment by such authority seeking condemnation of the amount of the award and the final judgment on appeal, that such authority shall become vested with a fee-simple indefeasible title to the property with reference to which the condemnation is instituted." Section 1 refers to the law amended as "an act entitled 'housing-authorities law' as the same appears in the Georgia Laws of 1937, pages 210-230;" and other sections refer to the law amended as "said act of 1937" and "said act." Thus section 7 of the act of 1939 refers to title 36 of the Code or "any amendments thereof," or "any other method of condemnation provided by law," only as a description of the condemnation proceedings in which the "housing authorities shall become vested with fee-simple indefeasible title to the property involved in such proceedings." Neither that section nor the title nor other parts of the act "expressly amend" or "purport to amend"

the Code, and the *express* purpose of the amendment as it is stated is to amend the act of 1937. Therefore the failure to more particularly describe sections in title 36 of the Code, which are *impliedly* amended, would not render the act unconstitutional for this reason.

(*b*) As to the further ground of attack on the act of 1939, under the same constitutional provision, for failure sufficiently to describe the amended act of 1937, the purpose of the requirement is to put the members of the General Assembly on reasonable notice as to what law is intended to be amended or repealed, so that they may ascertain if and how an old law is intended to be modified. *Mayes* v. *Daniel,* 186 *Ga.* 345, 355 (198 S. E. 535). Section 1 of the original act of 1937 itself provided that "this act may be referred to as the 'housing-authorities law.'" Not only did the title but the body of the act of 1939 thus refer to it, but added, "as the same appears in the Georgia Laws of 1937, pages 210-230." By other provisions in both acts the law amended was still further identified. These means of identification were sufficient. See *Fullington* v. *Williams,* 98 *Ga.* 807, 810 (27 S. E. 183); *Adams* v. *Wright,* 84 *Ga.* 720 (11 S. E. 893); *Town of Maysville* v. *Smith,* 132 *Ga.* 316, 318-320 (64 S. E. 131); *Tison* v. *Doerun,* 155 *Ga.* 367 (2), 371 (116 S. E. 615); *Holland* v. *State,* 155 *Ga.* 795 (2), 800 (118 S. E. 203). Accordingly, all of the grounds of constitutional attack on the housing acts of 1937 and 1939 are without merit.

■ The petition further attacked the power of the Housing Authority of the City of Rome to function, because of an alleged failure of the city commission to comply with section 4 of the act of 1937 (p. 215), by passing the resolution declaring a "need for [such] an authority to function in said city," and creating that body, without "any investigation, survey, or hearing of any facts relative thereto." By a "validating act," approved March 23, 1939 (Ga. L. 1939, p. 126), which is not attacked, the legislature provided that "the establishment and organization of housing authorities under the provisions" of said act of 1937, "together with all proceedings, acts, and things heretofore undertaken, performed, or done with reference thereto, are hereby validated, ratified, confirmed, approved, and declared legal in all respects, notwithstanding any defect or irregularity therein or any want

of statutory authority." Since the act of 1937 itself made no reference to the requirements contended for, and the resolution showed a compliance with all conditions precedent stated in the act, and since in any event the validating act of 1939 in terms validated and declared legal the creation of this housing authority, it can not be held to be without authority to function on account of the alleged defect in the resolution and basis for its enactment. The question has been decided adversely to the petitioners, by recent decisions in other States, involving similar laws and resolutions. Chatman *v.* Huntington Housing Authority (W. Va.), 3 S. E. 2d, 502; Knoxville Housing Authority *v.* Knoxville (Tenn.), 123 S. W. 2d, 1085; McNulty *v.* Owens, 188 S. C. 377 (199 S. E. 425). See also Rutherford *v.* Great Falls, 107 Mont. 512 (86 Pac. 2d, 656).

■ The petitioners attacked also the sufficiency of the notice served upon them as owners of land, under sec. 12 of the housing act of 1937, and title 36 of the Code, relating to condemnation, upon the grounds that it failed to state that the property was to be acquired for a "public use" or for "the uses contemplated under . . said 'housing-authorities law;'" and to state that the parties could not agree on the compensation to be paid the owners, especially since no offer was made to the two minor children represented by the plaintiff mother, proceeding for them as next friend and for herself individually, or to any person authorized by law to represent them. The notice in question stated that the housing authority sought to condemn and acquire the fee-simple title to this property, "for the purpose of constructing a low-cost housing project in the fourth ward of said city [Rome] . . under . . the United States housing act of 1937 as amended," and the Georgia housing acts of 1937 as amended, "said project being known as 'Project 5-1,'" and being as further described, and other requirements specified in the statute being stated in the notice. As to the mention of a "public purpose," the notice declared that the acquisition of title for the "low-cost housing project" described was under these described United States and State housing laws. In the *Williamson* case, supra, this court held that such a project is "for public purposes, and affects the general public." The notice therefore sufficiently stated a "public use." As to the other attack on the notice, there is no statute requiring

that it must contain a statement as to the failure of the parties to agree on compensation. While such a failure to agree is made "an essential prerequisite to the condemnation of private property for public uses," under the Code, §§ 36-302, 36-303 (*City of Atlanta* v. *Austell,* 146 *Ga.* 456, 458, 91 S. E. 478; *City of Elberton* v. *Hobbs,* 121 *Ga.* 750, 49 S. E. 780; *Bridwell* v. *Gale City Terminal Co.,* 127 *Ga.* 520 (8), 535, 56 S. E. 624, 10 L. R. A. (N. S.) 909), the question arose in those cases on the merits of the right to condemn as shown by the evidence at hearings, and not on the nature of the notice.

■ The petition also sought to enjoin the local housing authority from expending or contracting as to moneys received by it from the United States Housing Authority, on the ground that there had not been and could not legally be any contribution by the City of Rome of cash, land, or other values in the percentage required by the Federal "low-rent housing" act of September 1, 1937, as amended. U. S. Code Ann. Supp., title 42, §§ 1401-1421; 50 U. S. Stat. 888-898, as amended. It is the general rule that "no person can possibly be heard to complain in equity of that with which he is in no way concerned, and which not only can not injure him but may operate to his benefit." *Mayor &c. of Gainesville* v. *Simmons,* 96 *Ga.* 477 (3), 480 (23 S. E. 508); *Clark* v. *Cline,* 123 *Ga.* 856, 864 (51 S. E. 617). While it has often been held that citizens and taxpayers of counties and municipalities have such an interest as will support a petition to enjoin an unlawful disbursement of the public funds of their *counties or municipalities,* the rule is otherwise as to an injunction by a taxpayer against the expenditure of *Federal* funds. In Massachusetts v. Mellon, 262 U. S. 447 (4), 486-488 (43 Sup. Ct. 597, 67 L. ed. 1078), the United States Supreme Court held that an individual, proceeding merely as a past and future Federal taxpayer, can not maintain in equity a suit to restrain enforcement of an act of Congress authorizing an appropriation of public money, on the ground that the act is invalid; for the reason that some threat of direct injury, not suffered merely in common with people generally, must be shown. The distinction between the two rules under the Mellon case as to Federal funds, and the cases relating to city and county funds, was noted in *Aiken* v. *Armislead,* 186 *Ga.* 368, 381, 385 (198 S. E. 237), with a citation of other cases.

■

See also *Peeples* v. *Byrd,* 98 *Ga.* 688 (4), 693 (25 S. E. 677). Here, even if the petitioners had alleged that they were Federal taxpayers or contributors to Federal funds, they could not, under the Mellon case, have attacked the expenditure of the Federal funds, at least without showing some threat of direct injury not sustained by the general public. But the petition showed even a less direct interest, since it was brought only by owners of property sought to be condemned.

■ Finally, the legality of the resolution passed by the housing authority under section 12 of the act of 1937 is attacked on the ground that the resolution failed to state a sufficient description of the property. The trial court, by rulings on the demurrers adverse to the petitioners, eliminated all other questions from the hearing on a temporary injunction. The defendant introduced in evidence an extract from its official minutes, setting forth its adoption of a resolution declaring that whereas it was "necessary for the purpose of this authority, in connection with Project Ga. 5-1, that parcel number 22 be acquired, and that in order to acquire title thereto it is necessary that the same be condemned as provided by law, . . therefore be it resolved that it is deemed necessary for the purpose of this authority that it acquire title to said properties, and that in order to do so the same be acquired by the exercise of eminent domain under the law; provided, however, the attorney for this authority shall exert every effort to acquire title to said properties, all or any part thereof, without condemnation, if possible." The defendant introduced also the evidence of its secretary, treasurer, and executive director, that "said authority, in co-operation with and under loans from the United States Housing Authority, is undertaking to construct and develop two projects in the City of Rome and other work incidental to the completion of the two low-cost housing projects in said city, they being designated respectively Desota Homes and Alto View Terrace, one of which is located in the fourth ward of the City of Rome, Georgia, and the other in the seventh ward, . . that located in the fourth ward . . being designated and known as the United States Housing Authority Project, Ga. 5-1; that said Project Ga. 5-1 has been surveyed and platted, a survey and plat of the same being hereto attached and made a part of this affidavit; that the numbers shown on said survey and that in

circles designate the number of the parcel in that particular project, the property of plaintiffs in the above-stated cause being designated and known as 'Parcel No. 22,' and is designated on said survey and plat by said figures '22' within a circle, the same being the tract of land fronting 60 feet on the west side of North Fifth Avenue," and further as shown in the condemnation notice. The plat and survey referred to, containing the identification of the property as made by the witness, and showing it to be the same as that described in the notice and referred to in the petition, was also introduced with the affidavit. There was no objection to the introduction of any of the evidence. The only exception is a general assignment of error that the refusal of a temporary injunction was "contrary to law."

Parol testimony is admissible to explain or clarify a general description of property in a deed, and a written description is sufficiently certain if it contain a key to unlock, so as to show by extrinsic evidence the property intended. See *Prudential Insurance Co.* v. *Hill,* 170 *Ga.* 600 (153 S. E. 516), and cit.; *Lewis* v. *Trimble,* 151 *Ga.* 97 (2) (106 S. E. 101); *King* v. *Sears,* 91 *Ga.* 577 (4), 586 (18 S. E. 830); *Burson* v. *Shields,* 160 *Ga.* 723, 724 (129 S. E. 22); *Reynolds* v. *Tifton Guano Co.,* 20 *Ga. App.* 49, 50 (92 S. E. 389), and cit. Section 12 of the housing act of 1937 (p. 223) requires that, before exercising the power of eminent domain for its purposes, a housing authority shall adopt a "resolution declaring that the acquisition of the real property described therein is necessary for such purposes." The housing legislation, under the *Williamson* decision, was of remedial character. Whether or not the stringent restrictions as to the admissibility of parol testimony to explain descriptions of property in deeds and other instruments would apply to a description in a resolution under section 12 of the housing act, and whether or not the description was sufficient to authorize introduction of parol identifying testimony in this case, it is unnecessary to decide, since, in the absence of any objection at the hearing to its admission, and of any exception save that the judgment refusing an interlocutory injunction was "contrary to law," the petitioners are precluded from now attacking such testimony.

Under the preceding holdings, the court properly sustained the demurrers to all parts of the petition, except that relating to the

description in the resolution, and, under the clear identifying testimony admitted without objection, properly refused an interlocutory injunction.

*Judgment affirmed. All the Justices concur.*