TELFORD *et al. v.* THE CITY OF GAINESVILLE *et al.;* et *vice versa.*

Nos. 17417, 17418. Argued April 9, 1951—Decided May 14, 1951.

62

J. E. Palmour Jr., for plaintiffs.

Hammond Johnson Jr., Emory Robinson, Dunlap & Dunlap, and W. P. Whelchel, for defendants.

CANDLER, Justice. (After stating the foregoing facts.) Concededly, if the attacks made upon the constitutionality of the

two Georgia housing acts of 1937 and 1939 are not meritorious, and if the co-operation agreement of December 5, 1949, between the City of Gainesville and the Housing Authority of the City of Gainesville is not invalid for the reasons assigned, the petition as amended failed to state a cause of action for any of the relief sought and, consequently, should have been dismissed on the demurrer interposed thereto. We will therefore first consider and dispose of the above-mentioned questions.

■ The plaintiffs' first specific ground of attack is that the two Georgia acts here involved violate article 1, section 1, paragraph 3 of the Georgia Constitution of 1945 (Code, Ann., § 2-103), which declares that "No person shall be deprived of life, liberty, or property, except by due process of law." It is alleged and argued that the two acts here in question are unconstitutional because they authorize and empower the governing body of a municipality, without making any provision for notice and without providing an opportunity for hearing, to arbitrarily and conclusively find (a) that insanitary or unsafe inhabited dwelling accommodations exist in such city, or (b) that there is a shortage of safe or sanitary dwelling accommodations in such city available to persons of low income at rentals they can afford; and, upon a finding that either or both exist, declare the city's need for a housing authority, when, as in this case, neither of said conditions in fact exists. Assuming, but not holding, that the plaintiffs in this case had a right to make this attack, it is in our opinion without merit. The operation of a statute complete within itself may be made dependent upon the existence of some contingency fixed therein. 16 C.J.S. 414, § 141. And it is well understood that, while a legislature may not delegate the power to make laws, it may nevertheless delegate the power "to determine some fact or state of things on which the law may depend." 11 Am. Jur. 949, § 235. The two housing acts here involved were complete in every respect when they left the hands of the legislature. They fully created and established in and for each city of this State having a population of 5000 or more a public body corporate and politic to be known as the "Housing Authority." They provided that the public body corporate and politic so created and established was not to transact any business until the governing body of the city, under

terms, conditions, and procedure laid down by the housing acts, found and declared that there was a need for it to function. The fact-finding power lodged by the legislature in the city's governing body bears only upon the question whether certain conditions exist justifying the activation of a housing authority under terms, conditions, and procedure therein prescribed, and that purely ministerial power, so vested, is in no respect judicial in character. This being true, and we hold that it is, notice of and an opportunity for a hearing upon the question of a need for activating the Authority is not required by the due-process clause of our Constitution of 1945. *City of Valdosta* v. *Harris*, 156 *Ga.* 490 (119 S. E. 625); *Baugh* v. *City of LaGrange*, 161 *Ga.* 80 (3) (130 S. E. 69); 11 Am. Jur. 945, § 232. See also *Barber* v. *Housing Authority of the City of Rome*, 189 *Ga.* 155 (5 S. E. 2d, 425), *Hogg* v. *Housing Authority of the City of Rome*, 189 *Ga.* 164 (5 S. E. 2d, 431), Cox *v.* City of Kinston, 217 N. C. 391 (8 S. E. 2d, 252), and Chapman *v.* Huntington Housing Authority, 121 W. Va. 319 (3 S. E. 2d, 502).

█ It is also contended that the two housing authority acts involved are unconstitutional, and therefore void, because they offend article 4, section 4, paragraph 1, of the Constitution of 1945 (Code, Ann., § 2-2701), which provides that "All contracts and agreements which may have the effect, or be intended to have the effect, to defeat or lessen competition, or to encourage monopoly, shall be illegal and void. The General Assembly of this State shall have no power to authorize any such contract or agreement." No authority from any jurisdiction has been cited by counsel, or found by us, in support of this attack, and we cannot agree that the two acts here involved should be stricken· down for this reason. As we construe and understand their ·beneficent intent and purpose, it is sufficient ·to say that the results accomplished by them will not defeat or lessen competition. Consequently, there is no merit in this attack upon the constitutionality of the acts in question. See *Williamson* v. *Housing Authority of Augusta*, 186 *Ga.* 673 (199 S. E. 43).

█ Section 4 of the co-operation agreement between the City of Gainesville and the Housing Authority of the City of Gainesville is as follows: ' "The City agrees that subsequent to the date of initiation (as defined in the act) of each project and

within five years after the completion thereof, or such further period as may be approved by the PHA, there has been or will be eliminated (as approved by the PHA) by demolition, condemnation, effective closing, or compulsory repair or improvement, of unsafe or insanitary dwelling units situated in the locality or metropolitan area of the City substantially equal in number to the number of newly constructed dwelling units provided by the project; provided, that, where more than one family is living in an unsafe or insanitary dwelling unit, the elimination of such dwelling unit shall count as the elimination of units equal to the number of families accommodated therein; and provided, further, that this paragraph 4 shall not apply in the case of (a) any project developed on the site of a slum cleared subsequent to July 15, 1949, and that the dwelling units eliminated by the clearance of the site of such project or any other low-rent housing project; or (b) any project located in a rural non-farm area." It is alleged and contended that the above-quoted section of the co-operation agreement is illegal, null, and void because, by the use of the words "as approved by the PHA," it undertook to delegate to the Public Housing Administration non-delegable municipal police power which the City of Gainesville only has a right to exercise. To this we do not agree. Over a number of constitutional attacks, we sustained the validity of a similar provision in a like contract between the City of Augusta and the Housing Authority of Augusta in the *Williamson* case, supra, and it is unnecessary to repeat here what was said there. It is, however, presently urged that the co-operation agreement here involved purportedly, but illegally, gives the Public Housing Administration the right to finally determine: "(a) When the dwellings mentioned will be demolished, condemned, closed, repaired or improved; (b) which, if any, of all the dwellings in said City will be eliminated, closed, condemned, repaired or improved; and (c) which of all the dwellings supposedly affected by said provision will be demolished, which condemned, which closed, which repaired or which improved." The declared purpose of the Federal Housing Act and of our State Housing Authorities Law is the elimination of unsafe or insanitary dwelling accommodations and the construction of a substantially like number of safe and sanitary dwelling units for

rent to persons of low income at rentals which they can afford. Federal funds are not available to a local housing authority for the development of low-rent or slum-clearance projects involv-ing the construction of new dwellings, "unless the project includes the elimination by demolition, condemnation, and effective closing, or the compulsory repair or improvement of unsafe or insanitary dwellings situated in the locality or metropolitan area, substantially equal in number to the number of newly constructed dwellings provided by the project; except that such elimination may, in the discretion of the Authority, be deferred in any locality or metropolitan area where the shortage of decent, safe, or sanitary housing available to families of low income is so acute as to force dangerous overcrowding of such families." 42 U.S.C.A. 1410. As the record in this case shows, the Housing Authority of the City of Gainesville has received from the Public Housing Administration a program reservation for 200 units of low-rent housing to be developed and located within the corporate limits of the City of Gainesville. That construction program calls for the elimination of a substantially like number of unsafe or insanitary dwelling accommodations and the equivalent eliminations, whether by demolition, condemnation, effective closing, or compulsory repair or improvement, must be approved by the Public Housing Administration before they can be counted as such against the quota of newly constructed units; and the City of Gainesville only has power to accomplish the eliminations where the owners of such unsafe or insanitary dwellings refuse to do so voluntarily. Properly construed, the city's agreement to co-operate with its local housing authority in effecting eliminations does not contem-plate or provide for a delegation of its police power to abate nuisances to the Public Housing Administration, as contended, but amounts only to an assurance, unnecessary perhaps, of a proper exercise of it by the city to the end that it will do what it ought in any event to do, namely, eliminate unsafe or insanitary dwellings in the interest of general welfare, as it alone can lawfully do. Code, § 72-401; *Wingate* v. *City of Doerun,* 177 *Ga.* 373 (170 S. E. 226). If any other construction would lead to the conclusion that the agreement is illegal, then it should be construed as stated above, in view of the presumption

that it is for a legal purpose. See *Hogg* v. *City of Rome*, 189 *Ga.* 298 (6 S. E. 2d, 48).

■ Section 5 of the co-operation agreement in part provides: "During the period commencing with the date of the acquisition of any part of the site or sites of any project and continuing so long as either (a) such project is used for low-rent housing purposes, or (b) any contract between the local authority and the PHA for loans or annual contributions, or both, with respect to such project shall remain in force and effect, or (c) any bonds issued in connection with such project shall remain outstanding, whichever period is the longest, the City, without cost or charge to the local authority or the tenants of such project (other than payments in lieu of taxes) shall: . . (d) Vacate such streets, roads, and alleys within the area of such projects as may be necessary in the development thereof, and convey without charge to the local authority such interest as the City may have in such vacated areas." It is alleged and urged that the above-quoted part of section 5 of the co-operation agreement is null and void because it purportedly, but illegally, undertakes to delegate municipal power, and provides for the future performance of ultra vires acts respecting control and disposition of the city's property. Manifestly and obviously there is no merit in the first of these contentions; and, since housing authorities are for a public use and purpose (*Williamson* v. *Housing Authority of Augusta*, supra), under the broad powers given to the governing body of the City of Gainesville by the provisions of the amended co-operation act of 1937, the validity of which is not attacked by the pleadings in this case, the second contention is likewise not meritorious for the reason assigned.

It follows, from what has been held in the four divisions of this opinion, that the petition as amended did not state a cause of action for any of the relief sought; and, accordingly, the judgment overruling the defendants' demurrer is erroneous and must be reversed. And, since all further proceedings taken in the case after the demurrer was erroneously overruled are nugatory (*Clements* v. *Hollingsworth*, 205 *Ga.* 153, 52 S. E. 2d, 465), it is unnecessary to decide any other question presented by the writs of error.

*Judgment affirmed in part and reversed in part on the main*

*bill of exceptions; and reversed on the cross-bill.   All the Justices concur.   Wyatt and Almand, JJ., concur specially.*

WYATT and ALMAND, Justices, concurring specially.   We concur in the judgment only because of the unanimous decision of this court in *Williamson* v. *Housing Authority of Augusta*, 186 *Ga.* 673.