HOGG *et al. v.* CITY OF ROME.

No. 13035.   NOVEMBER 17, 1939.

300

*Maddox & Griffin,* for plaintiffs.

*Wright & Willingham, Chasline Parker* and *Leon Covington,* for defendant.

DUCKWORTH, Justice. ■ In so far as the petition complains of a violation of section 6 of the housing co-operation law (Ga. L. 1937, p. 697), by failure to make estimate and appropriate

money, it should be noted that this law expressly provides that any such appropriation shall be made out of any moneys in the city treasury not appropriated to some other purpose. We think a proper construction of this law means that it imposes no obligation upon the city to pay such operating expenses if there is not in the treasury of such city money not appropriated to other purposes. In the petition it is positively alleged that there are no funds in the treasury of the City of Rome that have not already been appropriated to other purposes. Thus it is apparent that it would be useless for the city commissioners to make the estimate and appropriation provided for in the act. But petitioners, on information and belief, allege that the city will pay such expenses unless prevented by injunction. This allegation states no facts showing conduct or expressions remotely indicating an intention on the part of the city authorities thus to violate the law. The allegation, in the absence of any allegation of fact or circumstance, amounts to nothing more than a conclusion of the pleader, predicated upon a mere fear or suspicion. In construing the petition on demurrer, this allegation must be disregarded as a mere conclusion of the pleader. *Finleyson* v. *Liverpool &c. Ins. Co.*, 16 *Ga. App.* 51 (84 S. E. 311). But if this particular allegation be permitted to stand notwithstanding the fact that it is a mere conclusion, it fails to meet the requirements of the law to authorize an injunction. The petition contains no allegation of threat on the part of the city commission to expend the city funds in violation of law. Given the strongest interpretation possible, such an allegation shows merely that the petitioners, without reason or for reasons undisclosed by the petition, fear or suspect that the city will make an illegal expenditure of public money. No utterance or deed or act on the part of the city is set forth as a reason to support this fear of plaintiffs; and in thus failing to allege fault or misconduct on the part of the defendant this allegation stated no cause for injunction, and was properly dismissed on demurrer. *Pittard* v. *Summerour*, 181 *Ga.* 349 (182 S. E. 20), and cit. Moreover, the petition alleges that there are in the city treasury no funds not appropriated to other purposes, and the act referred to authorizes and requires expenditure of money in the treasury not appropriated to other purposes. In such circumstances the commissioners are not called upon by the act to spend money belonging to the city, nor could they do so without violating the

302

law; and the law presumes that they and all other public officers will obey the law. *Americus Grocery Co.* v. *Pitts Banking Co.*, 169 *Ga.* 70 (4) (149 S. E. 776). As to this ground the petition failed to allege a cause of action.

■ The other portions of the petition are attacks upon the validity of the contract between the City of Rome and the Housing Authority of Rome. One of the contentions is that the portions of the contract obligating the city to eliminate unsafe and insanitary dwelling units, to open and close streets, and to supply other municipal services and facilities, are void because they impose upon the city large financial obligations which it is unable to pay during the current year, thus creating a debt against the city. We do not think that the terms of the contract support such a contention. The contract provided that none of the provisions of the agreement should be construed as being obligatory upon the city to levy taxes or to in anywise create a financial obligation on the part of the city. When this provision is construed in connection with the other portions of the contract, it is clear that the city did not obligate itself to do anything which would create a debt against it. The contention that the contract necessitated the creation of a debt against the city is without merit.

■ By the terms of the contract, the City of Rome agreed to open or close such streets in the area of the housing project or adjacent thereto as the Housing Authority should find necessary in the development of the project, and to make such exceptions from building regulations and ordinances as the authority should find to be necessary. It is contended that these provisions of the contract are contrary to the terms of the charter of the City of Rome, in that they grant powers to the Housing Authority which are by the charter vested in the city commission; and therefore that they are ultra vires and null and void. The contract in question was entered into in pursuance of the housing co-operation law (Ga. L. 1937, p. 697), which authorized cities, "for the purpose of aiding and co-operating in the planning, undertaking, construction or operation of housing projects," to open or close streets and to make exceptions from building regulations and ordinances, and to enter into agreements with housing authorities respecting action to be taken by such cities pursuant to the powers granted. Assuming that the City of Rome went beyond the powers granted by the housing co-operation law in

agreeing to the provisions of the contract under attack, we think that the validating act of 1939 (Ga. L. 1939, p. 126) is sufficient answer to the attacks made in the instant case. That act provided: "All contracts, agreements, obligations, and undertakings of such housing authorities, heretofore entered into relating to financing or aiding in the development, construction, maintenance, or operation of any housing project, . . including . . agreements with municipalities . . relating to co-operation and contributions in aid of housing projects, payments (if any) in lieu of taxes, furnishing of municipal services and facilities, and the elimination of unsafe and insanitary dwellings, and contracts for the construction of housing projects, together with all proceedings, acts and things heretofore undertaken, performed, or done with reference thereto, are herby validated, ratified, confirmed, approved, and declared legal in all respects, notwithstanding any defect or irregularity therein or any want of statutory authority." It is contended that this act sought to ratify and render valid contracts and agreements of the housing authority only in so far as they might be invalid because of lack of statutory authority on the part of such housing authority. This contention ignores the plain and explicit language of the act. Section 2 declares that "all contracts, agreements," etc., of such housing authorities "are hereby validated, ratified, confirmed, approved, and declared legal in all respects, notwithstanding any defect or irregularity therein or any want of statutory authority." It will be noted from the excerpts quoted that all contracts entered into by the housing authority are embraced and that they are declared legal in all respects. Would rendering valid and legal in all respects the acts of the housing authority have the effect of doing likewise to all its contracts? If the act does not apply to the whole of contracts entered into by the authority, and if in the present case the city was without authority to make such contract, then does this not defeat the explicit purpose and intention of the act? What good could be accomplished by the act if it simply made valid the housing authority's part of such contracts, and left them invalid as to the municipality which was the other contracting party? The City of Rome is a creature of the legislature, and its powers may be enlarged or diminished from time to time, at the will of its creator. See *Young* v. *Harrison*, 6 *Ga.* 130 (7); *Bass* v. *Columbus*, 30 *Ga.* 845; *Churchill* v. *Walker*, 68 *Ga.*

304

681 (4). Being thus as fully empowered to ratify the city's acts as it was the acts of the housing authority, is it not reasonable that the legislature, in seeking to validate the contracts in all respects, intended to use its full power to accomplish its purpose, rather than to use only half of its power and accomplish nothing? The act shows no contrary intention. The use of the words "of such housing authorities" shows no intention to limit the effect of its validation of the contracts described. On the contrary, these words are merely descriptive of the contracts and agreements which the act was intended to validate in all respects. The legislature clearly intended by this statute, the validity of which is not attacked, to validate and declare legal in all respects agreements such as the one in question. It follows that effect must be given to the validating act, which is presumed to be valid; and that these provisions of the contract are not subject to attack on the ground that they are ultra vires or violate provisions of the city charter. This act is likewise controlling on the other attacks made on the contract, all of which are based on the ground that the contract violated provisions of the charter. The petition failed to state a cause of action for any of the relief sought; and the court did not err in sustaining the demurrer and dismissing the action.

*Judgment affirmed. All the Justices concur.*