1. In this suit by a citizen and taxpayer against Southwest Georgia Regional Housing Authority, in which the plaintiff assailed four housing authorities statutes, including an amendment enacted in 1943, and a fifth statute known as housing co-operation law of 1937, as being unconstitutional for a number of reasons alleged, and, so far as related thereto, prayed "That the said Housing Authorities Law, as amended by act of the General Assembly of Georgia approved February 12, 1943, in so far as it authorizes rural housing projects by the defendant, be declared null and void." Held:
(a) Whether the petition be construed with or without the quoted prayer the attacks upon the statutes were too general and indefinite to raise any question as to their validity.
(b) An attack upon one statute is futile and will not be determined, when there is another statute to the same effect, the validity of which is not drawn in question.
(c) Under the preceding rulings, all attacks upon the statutes fail, and therefore the statutes are to be treated as valid in the instant case.
2. There being no allegation to show a dereliction of duty or impending dereliction on the part of the taxing authorities, it is to be presumed that all property mentioned in the petition will be duly taxed through proper official action, if it is subject to taxation under the constitution.
(a) Nor does it appear that the governing authorities of the petitioner's county have entered or are about to enter into any service contract with the defendant, or that they have paid or intend to pay any sum as expense of the first year's operation. Consequently, it does not appear that the plaintiff as a taxpayer is about to be injured by any action as to either of these matters.
3. The allegations to the effect that the defendant housing authority is about to enter upon a housing project that is not in keeping with the statutes did not show cause for injunctive relief in favor of the petitioner as a taxpayer.
4. The defendant, having sued Southwest Georgia Regional Housing Authority as a corporate entity, is estopped to deny its corporate existence However, it is not a county, municipality, or political division within the meaning of the constitutional provision contained in the Code, § 2-5501, and therefore its obligations will not be debts of a county, municipality, or political division within the purview of that provision.
(a) The petition did not state a cause of action, and was properly dismissed on general demurrer.
 No. 14783. MAY 4, 1944.
Ivan B. Stegall, as a citizen and taxpayer of Thomas County, filed a suit in the superior court of that county against Southwest Georgia Regional Housing Authority for an injunction and other *Page 572 
relief. The court sustained a general demurrer and dismissed the petition, and the plaintiff excepted to this judgment.
The petition contained substantially the following allegations:
(1) The plaintiff is a citizen, resident, and taxpayer of Thomas County, Georgia, is the owner of farm lands, is engaged in farming in said county, and resides within the area of the defendant's operations.
(2) The defendant, Southwest Georgia Regional Housing Authority, for the county of Thomas and ten other counties named, is a public body corporate organized and existing under and by virtue of the laws of Georgia, with authority to exercise the powers and other functions prescribed by acts of the General Assembly known as the housing authorities laws of Georgia. The said defendant, which will be hereinafter called the "regional authority," has an office, agent, and place of business in Thomas County, Georgia.
(3) Prior to February 12, 1943, each of the eleven counties had become duly organized and was functioning as a county-housing authority under act No. 411 of the laws of 1937, as amended by acts Nos. 241 and 249 of 1939. These county housing authorities, hereinafter referred to as "county authorities," had entered into loan and annual-contributions contracts with the United States Housing Authority, under which the latter agreed to lend to each of said county authorities 90 per cent. of the cost of constructing homes for farmers of low income, and also agreed to make to each of said county authorities, during a period of not exceeding sixty years, an annual contribution of 3 per cent. of the total construction and development cost of said homes, the said annual contributions being made for the purpose of permitting said homes to achieve their low-rent character. Under the said loan contracts, each of the county authorities borrowed from the United States Housing Authority, upon short-time notes, a sum of money stated, the total amount for the eleven counties being $487,500. All of said notes were outstanding and unpaid on April 20, 1943, the date on which the said Regional Authority, the defendant herein, was organized.
In accordance with the said loan contracts and in pursuance of certain agreements, leases, and conveyances, copies of which are attached as exhibits, each of the said county authorities has entered *Page 573 
into agreements with farm owners and tenants in forms set out in said exhibits, and has accepted deeds from owners of farm property to approximately one acre of land, on each of which a dwelling is being or will be built, to be leased "for" a tenant farmer, the head of a family, who (a) is eligible and admissible as a tenant in the low-rent housing project under the provisions of said act and the United States housing act of 1937 as amended, and (b) is actively engaged in operating his farm, or is a farmer, tenant, share-cropper, or wage hand. "Petitioner directs the court's attention particularly to the fact that the proposal to convey lands . . . contains an agreement that the landowner has an option to repurchase at any time, and that the landowner or his tenant, share-cropper, or wage hand, is given priority in the occupancy of the house being built, provided that such landowner, tenant, share-cropper, or wage hand is the head of a family of low income, and is otherwise eligible as a tenant within the meaning of said acts; and also an agreement that, so long as the house is made available, the land on which it is situated and the adjoining farm will not be used for any purpose other than farming, and will be operated or worked upon by the farmer as a tenant, or by a share-cropper or wage hand, except with the consent of said county authority. Said proposal to convey further provides that each landowner who conveys to the county authority shall demolish or eliminate at least one unsafe or insanitary dwelling unit."
(4) Between the 1st and 15th days of April, 1943, the governing bodies of each of the aforesaid county authorities adopted resolutions agreeing to transfer all their rights, contracts, agreements, obligations, and all real and personal property to the regional authority, upon its organization.
(5) On or about April 20, 1943, the board of commissioners of roads and revenues of each of the eleven counties named, the said counties being "contiguous," adopted a resolution, determining the existence of the facts and conditions essential to organization of a regional housing authority under the act of the General Assembly approved February 12, 1943, such facts and conditions being enumerated in the petition. The said resolutions were adopted after notice and public hearings as required by the act of 1943.
(6) On the same date, April 20, 1943, the board of commissioners *Page 574 
of roads and revenues of each of the said counties adopted another resolution appointing a commissioner for the regional authority, and these several appointments were approved by the State director of housing. Thereafter, the said commissioners met and duly organized the regional authority under the corporate name "Southwest Georgia Regional Housing Authority;" and the said authority now purports to be a body corporate and politic, and to be vested with all the powers and functions described in said housing authorities law.
(7) The said regional housing authority claims that by reason of the act of February 12, 1943, amending the State housing authorities law, and by reason of the resolutions above mentioned, it has been substituted for and has succeeded to all of the rights, powers, obligations, and conditions set forth in the contracts heretofore entered into by the county authorities, and it will proceed to carry out all of the terms, conditions, and obligations of these contracts, assuming the indebtedness upon all the notes above mentioned, and will proceed to construct the homes mentioned in said contracts, and will rent the same in accordance therewith, unless restrained by the court from so doing.
(8) On June 1, 1943, the regional housing authority entered into a consolidated-loan contract with the Federal Public Housing Authority, successor to the United States Housing Authority, whereby the said Federal housing authority agreed to lend to the regional housing authority the sum of $1,163,700, by purchasing its bonds in this amount, but not to exceed 90 per cent. of the development cost of the project; the said contract providing also for the construction of 648 dwelling units in the counties comprising said regional housing authority, at an average cost of $1800 per dwelling unit, each to be rented for approximately $75 per year and to be operated in accordance with the contracts herein mentioned.
The contract further provided that the regional housing authority would issue and sell to the public its bonds in the amount of $142,230, and in no event less than 10 per cent. of the development cost of the project; all of said bonds to bear interest at the rate of 2 1/2 per cent. per annum and to be secured by the annual contributions made by the Federal Public Housing Authority, and by a pledge of rents. The said loan contract is a consolidation of and *Page 575 
supersedes the loan contracts previously made between the county authorities and the United States housing authority. A consolidated annual-contributions contract was also made between the regional authority and the Federal Public Housing Authority.
(9) The said regional authority purposes to carry out the terms of said loan and annual-contributions contracts, and proposes to rent said property to farmers or their selectees in accordance with the terms of the agreements, conveyances, and leases, copies of which are attached, and further proposes to issue the bonds as above stated, and to use the proceeds for the purpose of constructing the said project and discharging the notes heretofore issued by the county authorities as aforesaid. The said regional authority proposes to perform all of said contracts and to enter into additional contracts with farmers in the forms of the attached agreements, leases, and conveyances. All of such actions and conduct on the part of the defendant, the plaintiff claims, are unlawful and unconstitutional for reasons hereinafter more fully set out, and unless permanently enjoined, the defendant will by engaging in this unlawful housing project cause irreparable damage to the plaintiff and all other taxpayers similarly situated, for which there is no adequate remedy at law.
(10) That the "Housing Authorities Law," enacted by the General Assembly of Georgia and approved March 30, 1937 (Ga. L. 1937, pp. 210-230), as amended by the act approved March 23, 1939 (Ga. L. 1939, pp. 112-122), as amended by the act approved March 23, 1939 (Ga. L. 1939, pp. 124-125), as amended by the act approved February 12, 1943 (Ga. L. 1943, pp. 146-161), and the "Housing Co-operation Law," approved March 31, 1937 (Ga. L. 1937, pp. 697-702), as well as all the acts, conduct, contracts, agreements, and proposals of the defendant hereinabove referred to, are null, void, and unconstitutional for the following reasons:
(a) The property of the defendant is declared by section 21 of the housing authorities law of Georgia of 1937 to be public property and used for an essential public and governmental purpose, and as such shall be exempt from all taxes and special assessments of any city, county, State, or political subdivision thereof; and this exemption is in violation of the provision of the constitution of Georgia contained in the Code, § 2-5002, which provides: "The General Assembly may be law exempt from taxation all public property; *Page 576 
[and] all institutions of purely public charity," because the low-rent housing projects as proposed are not for a public purpose, and the properties are not public property as contemplated by the above-quoted constitutional provision; nor is the defendant an institution of purely public character; nor are its properties used for charitable purposes, and this is especially true on account of a provision of the agreement between the defendant and the landowner as contained in the "Proposal to Convey Land," a copy of which is attached to this petition, as follows: "If this proposal is accepted by the local authority, the local authority agrees that the owner (as the owner of parcel A, exclusive of parcel B), his assigns, successor in interest, or any mortgagee who may acquire title to parcel A, exclusive of parcel B, through foreclosure or otherwise, or one of his or their tenants, share-croppers, or employees, shall have the prior privilege of leasing parcel B from the local authority under the rural dwelling lease substantially in the form attached hereto and marked Exhibit II, provided any such lessee of parcel B (i) operates and works parcel A as a farm, and (ii) is eligible for admission as a tenant to a low-rent housing project under the provisions of the housing authorities law of the State of . . . and the United States Housing Act of 1937, as amended."
(b) The loan contract, and the notes and bonds to be issued in pursuance thereof, are in violation of the provision in the constitution of this State as expressed in the Code, § 2-5501, prohibiting any county, municipal corporation, or political division of this State from incurring any debt without the assent of two-thirds of the qualified voters; no such assent having been given, and it being contended that the regional authority is merely an agency of the several counties named, and is a "political division of this State" within the meaning of said constitutional provision.
(c) The said several acts of the General Assembly hereinabove listed, as amended, and the acts and conduct of the defendant and others hereinabove alleged and described, are in violation of the constitutional provision expressed in the Code, § 2-1201, declaring that the legislative powers of the State shall be vested in a General Assembly, because the said legislative enactments and the acts of the defendant and others thereunder constitute an attempt to delegate legislative powers, as follows: (1) To the governing *Page 577 
bodies of counties, the power to create public corporate housing authorities; (2) To such authorities when so created, the power to consolidate and create other public bodies corporate; (3) To the governing bodies of said authorities the power to determine the type, nature, and extent of the projects to be undertaken, the location thereof, the number of counties to be included therein, the amount of bonds to be issued, secured, and redeemed, and other like matters, including the power of eminent domain and the power of acquisition of land and privileges of tax exemption.
(d) The housing authorities law as amended, and the actions and proposed actions specified, are in violation of the due-process clause of the State constitution (Code, § 2-103), and the Fourteenth amendment of the constitution of the United States as expressed in the Georgia Code, § 1-815, because said proposed slum-clearance and low-rent housing projects would destroy the rental values of the property of the petitioner and of others similarly situated, within the several counties named, and will amount to taking their property without due process of law; and for the further reason that the property of the plaintiff and of others in a similar situation will be rendered less valuable because the exemption of the property and bonds of the said housing authority will necessarily increase the amount of taxes levied and assessed against the petitioner's property. Said acts are also in violation of the Fourteenth amendment (Code, § 1-815), in that they deny to the petitioner the equal protection of the law, because said proposed slum-clearance and low-rent housing projects are not for the benefit of the general public, including petitioner, but are for the benefit of only a small group of citizens.
(e) Said acts and all contracts and agreements and actions taken pursuant thereto are in violation of the provision of the constitution of Georgia expressed in the Code, § 2-102, providing that "Protection to person and property is the paramount duty of government and shall be impartial and complete;" for the reason that the intended project is not for a public purpose, but is only for private use and for a small group of citizens, and materially lessens the value of the properties of the petitioner and others similarly situated, as owners of farm lands; and for the additional reason that certain low-income families are given priority in occupancy over other low-income families because they are tenants, *Page 578 
tenant farmers, wage earners and selectees of farmers, which amounts to an unconstitutional discrimination in favor of the selected low-income families.
(f) Said housing authorities law as amended is in violation of the provision of the constitution of this State, as contained in the Code, § 2-1808, declaring that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," for the reason that "said act" refers to more than one subject-matter, the alleged different subject-matters being enumerated; and "said acts" further violate said constitutional provision, in that they contain matters which are not expressed in the title thereof, several of such alleged matters being listed in the petition.
(g) "Said housing co-operation law" is in violation of the same constitutional provision, Code, § 2-1808, the reasons alleged being similar to those last-above indicated.
(h) Said acts of the General Assembly of Georgia, and all of the acts, conduct, agreements, and contracts of the defendant, hereinabove specified, are in violation of the provision of the State constitution, as expressed in the Code, § 2-2401, providing as follows: "The right of taxation is a sovereign right, inalienable — indestructible — is the life of the State, . . and neither the General Assembly, nor any, nor all other departments of the Government . . shall ever have the authority to . . limit, or restrain this right; . . and said right of taxation shall always be under the complete control of, and revocable by, the State, notwithstanding any gift, grant, or contract, whatsoever, by the General Assembly'" for the reason that they constitute an effort to limit and restrict the right of taxation.
(i) Said acts of the General Assembly of Georgia, and the acts and conduct of the defendant as specified, are in violation of the provision of the constitution of Georgia, as expressed in the Code, § 2-2502, declaring that exercise of the police power shall never be "so construed, as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well-being of the State," for the reason that the defendant is permitted thereunder to conduct its business without the payment of taxes on its bonds, thereby infringing the equal rights of the plaintiff and others similarly situated, who have no such right. *Page 579 
(j) Said acts of the General Assembly of Georgia, and the action and conduct of the defendant pursuant thereto, are in violation of the provision of the constitution of Georgia, contained in the Code, § 2-5005, that "All laws exempting property from taxation other than the property herein enumerated shall be void," for the reason that the property of the defendant is not public property, and does not come within any of the other classes of property specified in the constitution which may be exempted from taxation.
(k) Said acts of the General Assembly of Georgia, and the actions of the defendant pursuant thereto, are in violation of the provision of the constitution of Georgia expressed in the Code, § 2-5006, declaring that "The power to tax corporations, and corporate property shall not be surrendered, or suspended by any contract, or grant to which the State shall be a party," for the reason that they amount to a grant or contract by the State suspending or surrendering its power to tax the property of the defendant, including its bonds.
(l) Said acts of the General Assembly of Georgia, and the action and conduct of the defendant pursuant thereto, are in violation of the provision of the constitution of Georgia contained in the Code, § 2-6401, which provides: "The General Assembly shall not, by vote, resolution or order grant any donation or gratuity in favor of any person, corporation, or association," for the reason that in substance and fact they amount to the grant of a donation or gratuity in favor of the defendant, a corporation, in that the property of said corporation and its bonds issued pursuant to said acts are sought to be made exempt from taxation.
(m) Said acts of the General Assembly of Georgia, and the actions of the defendant pursuant thereto, are in violation of the provision of the Georgia constitution, contained in the Code, § 2-5002, which provides: "The General Assembly may, by law, exempt from taxation all public property; . . [and] all institutions of purely public charity," for the reason that the defendant is not a municipal corporation and its bonds or obligations are not authorized by the General Assembly of Georgia to be exempt from taxation.
(n) Said acts of the General Assembly of Georgia, and the action and conduct of the defendant pursuant thereto, are in violation of the provision of the constitution, expressed in the Code, *Page 580 
§ 2-5401, which provides: "The General Assembly shall not authorize any county, municipal corporation, or political division of this State to become a stockholder in any company, corporation, or association, or to appropriate money for, or to loan its credit to any corporation, company, association, institution, or individual except for purely charitable purposes," for the reason that the defendant is not a corporation organized for purely charitable purposes. Nevertheless, said acts require the several counties embraced in the jurisdiction of the defendant to appropriate money and to lend credit thereto.
(o) Said acts of the General Assembly of Georgia, and the conduct and actions of the defendant pursuant thereto are in violation of the provision of the Georgia constitution, contained in the Code, § 2-5402, which provides: "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose," except those therein specified, for the reason that by the provisions of said acts all counties which assent to the setting up of the housing authority are required to appropriate money for the expense of the first year's operation, which is not one of the purposes named in the constitutional provision above quoted.
(p) Said acts of the General Assembly of Georgia, and the actions of the defendant pursuant thereto, are in violation of the debt clause of the Georgia constitution, contained in the Code, § 2-5501, not only for the reasons stated in subparagraph (b) above, but also for the reason that said acts of the General Assembly attempt to authorize counties to enter into service contracts with said housing authorities in lieu of taxes, and the obligations of a county or other political subdivision under service contracts will constitute a debt in violation of the above-stated provision of the constitution.
(q) The proposed scheme of building homes in rural communities is not for a public purpose, but is in reality for the private benefit of certain landowners, tenants, and the defendant corporation, and is in violation of the constitutional provision contained in the Code, § 2-6401, which provides: "The General Assembly shall not, by vote, resolution, or order grant any donation or gratuity in favor of any person, corporation, or association," for the reason that the public does not benefit by the proposed scheme, but only those landowners, tenants, and selectees with whom the defendant *Page 581 
enters into agreements, and said defendant can and may act arbitrarily and capriciously in making such agreements.
(r) The provisions of said acts of the General Assembly seeking to exempt the property and bonds of the defendant from taxation are in violation of the provision of the constitution, contained in the Code, § 2-5002, for the reason that the property of the defendant is not public property, nor is the defendant an institution of purely public charity.
(s) The acts, conduct, and agreements are illegal and void and not in compliance with the acts of the General Assembly above mentioned, for the reason that said project does not provide for the clearance of slums, except by the agreement of the farmer that he will demolish a substandard house located on his farm, which the plaintiff alleges does not constitute a clearance of slums within the meaning of the housing authorities law, as amended.
(t) That the issuance and proposed issuance of bonds and notes by the defendant, as hereinabove alleged, and the provisions and acts of the General Assembly of Georgia seeking to exempt such bonds and notes from taxation, are unlawful and in violation of the provision of the constitution, contained in the Code, § 2-5002, which provides: "The General Assembly may, by law, exempt from taxation all public property; . . [and] all institutions of purely public charity," because said bonds and notes are not issued for a public purpose or for a charitable purpose, nor by an institution of purely public charity.
The prayers were as follows:
(1) That the said housing authorities law, as amended by act of the General Assembly of Georgia approved February 12, 1943, in so far as it authorizes rural housing projects by the defendant, be declared null and void.
(2) That the acts, contracts, and agreements heretofore taken and proposed to be taken by the defendant, as hereinabove in this petition set forth, be declared invalid and unconstitutional.
(3) That the defendant, Southwest Georgia Regional Housing Authority, be permanently enjoined from proceeding with or constructing the said project, and from entering into additional contracts with farmers, and from issuing the bonds and notes herein described, and from carrying out the contracts made by the county authorities; and that the contracts and agreements, leases and conveyances, *Page 582 
as set forth in the several exhibits hereto attached, be declared illegal, null, and void.
(4) That the real and personal property of the defendant be decreed subject to taxes, and that the bonds and income derived therefrom be also declared subject to taxation.
(5) That process issue requiring the defendant to be and appear at the next term of the court to answer the petitioner's complaint.
(6) That the plaintiff have such other, further, and additional relief as to the court may seem meet and proper.
It will be noticed that several of the above-stated subparagraphs make substantially the same complaints, especially those relating to exemption from taxation. Among the exhibits were copies of resolutions passed by the commissioners of roads and revenues of Thomas County and by Thomas County Housing Authority, and it was alleged that similar resolutions had been passed in all the other counties. Copies of proposed contracts with farmers, and of leases, were also attached, all being in blank with no particular property described.
If we were at liberty to consult our personal inclinations, we might find ourselves endeavoring to oblige, by deciding all of the questions referred to in the petition and discussed in the briefs. Also, it may be desirable, in the public interest, to have all of these questions, or such of them as may remain unsettled, finally and expeditiously determined, and in neither brief do we find any suggestion that we may not now determine them. For reasons, however, that are deemed compelling, we are unable to treat the case as counsel have treated it. We refer to certain well-established principles which must be considered in dealing with attacks upon the constitutionality of statutes, and with other matters that are here involved.
It is a grave matter for this court to set aside an act of the co-ordinate legislative department, and vague and indefinite attacks cannot be considered. Savannah, Florida Western Ry.Co. v. Hardin, 110 Ga. 433, 437 (35 S.E. 681). In order to raise a question as to the constitutionality of a "law" (Code, § 2-3005), at least three things must always be shown; (1) the statute or *Page 583 
part of a statute which the party would challenge must be stated, or pointed out with fair precision; (2) the provision of the constitution which it is claimed has been violated must also be clearly designated; and (3) it must be shown wherein the statute violates such constitutional provision. Abel v. State,190 Ga. 651 (10 S.E.2d 198); Emerson v. Southwest GeorgiaRegional Housing Authority, 196 Ga. 675 (27 S.E.2d 334). Nothing less would comport with the requirement of good pleading, to the effect that a party shall plainly, fully, and distinctly set forth his cause of action, legal or equitable. Code, § 81-101. While the petition here may have met the second and third requirements above mentioned, none of the attacks were sufficient to meet the first requirement. We shall refer again to this matter.
Some other principles that must be considered are as follows:
This court will always abstain from passing upon the constitutionality of an act of the General Assembly, if there is any other valid ground upon which to base a decision. McGill v.Osborne, 131 Ga. 541 (2) (62 S.E. 811); Georgia Power Co.
v. Decatur, 173 Ga. 219 (3) (159 S.E. 863).
No person will be heard to question the constitutionality of a statute, except as it may infringe upon his personal or property rights. Plumb v. Christie, 103 Ga. 686 (2) (30 S.E. 759, 42 L.R.A. 181); Hazleton v. Atlanta, 147 Ga. 207 (4), 208 (93 S.E. 202).
Nor would an original valid statute be rendered invalid merely by adding an invalid amendment, for, in such case, the original act would stand, even though the amendment should fall. CompareBennett v. Wheatley, 154 Ga. 591 (2) (115 S.E. 83).
An injunction will not be granted on mere apprehension. A party suing as a taxpayer, in order to obtain such relief, must show that he is in danger of injury through loss of public funds or property. Reid v. Mayor, etc. of Eatonton, 80 Ga. 755
(6 S.E. 602); Aiken v. Armistead, 186 Ga. 368 (2-4) (198 S.E. 237); City of Valdosta v. Singleton, 197 Ga. 194
(28 S.E.2d 759).
It is to be presumed that public officers, including the taxing authorities, will perform their official duties at the proper time and in the proper manner, unless the contrary appears. Connolly v. Atlantic Contracting Co., 120 Ga. 213
(2) (47 S.E. 575); Loudermilk v. Stephens, 126 Ga. 782
(55 S.E. 956). *Page 584 
A plaintiff who proceeds against a defendant as a corporation is estopped to deny its corporate existence. Etowah Milling Co.
v. Crenshaw, 116 Ga. 406 (2) (42 S.E. 709).
A declaratory action is not maintainable in this State.Southern Railway Co. v. State, 116 Ga. 276 (2) (42 S.E. 508).
If a judgment is right for any reason, it must be affirmed.Coker v. Atlanta, 186 Ga. 473 (198 S.E. 74); Guffin v.Kelly, 191 Ga. 880 (4), 890 (14 S.E.2d 50).
1. Measured by the foregoing rules, how stands the present case? The petition assails as invalid five acts of the General Assembly, some of them lengthy. In one view of the petition, that is, to consider it without its prayers, each attack appears to have been aimed at all of these statutes as an entirety, for it is alleged in paragraph 10 that they are "void and unconstitutional for the following reasons, to wit," and then numerous reasons are given in subparagraphs.
So far as we are aware, this court has never dealt with a case in which it was sought by one combined stroke to annihilate five separate statute as an entirety, and even in cases where only one statute was challenged as a whole, it has been said that the attack would necessarily fail unless the statute was invalid in every part for some reason alleged. Atlantic Loan Co. v.Peterson, 181 Ga. 266 (182 S.E. 15); Miller v. Head,186 Ga. 694, 708 (198 S.E. 680). See also, in this connection,Blaylock v. Hackel, 164 Ga. 257 (4) (138 S.E. 333);Washington Water Electric Co. v. Pope Manufacturing Co.,176 Ga. 155 (2) (167 S.E. 286); Patten v. Miller,190 Ga. 123 (3) (8 S.E.2d 757). So, in this case, such an omnibus attack would fail unless every section, paragraph, and sentence of all the five statutes should be held invalid, and, as will be mentioned again presently, only one section of any statute was specifically mentioned.
It may be said off the record, we do not apprehend that able counsel intended for one moment to draw in question all parts of all of these statutes by the petition as framed; yet it is by the record that the case must be determined, and, according to settled rules of pleading, we can not but conclude that the petition, in so far as it inveighs against statutes, is too general and indefinite with respect thereto.
Let us now consider the petition with its prayers. As to the *Page 585 
matter here under discussion, the only prayer was "That the said housing authorities law, as amended by act of the General Assembly of Georgia approved February 12, 1943, in so far as it authorizes rural housing projects by the defendant, be declared null and void." This prayer would seem to qualify the various preceding attacks, by limiting them to only so much of the "housing authorities law, as amended . . as authorizes rural housing projects;" and a study of the briefs supports that interpretation as representing the actual intention of the pleader. Under this construction, the indefiniteness of the petition, instead of being relieved, is actually increased, if not multiplied. Several of these statutes, including the amendment of 1943, deal in some parts with urban housing, and in other parts with rural housing, and there are various provisions in each that apply alike to both subjects. The petition does not designate any particular provision that the pleader would treat as relating only to rural housing, and therefore, in this view of the petition, it is even more certain that the attacks therein made are too vague and indefinite to raise any question for determination. Rooks v. Tindall, 138 Ga. 863 (2) (76 S.E. 378); Funk v. Browne, 145 Ga. 828 (4), (90 S.E. 44);Commercial Bank of Athens v. Blassingame, 147 Ga. 636
(95 S.E. 222); Crapp v. State, 148 Ga. 150 (95 S.E. 993);Glover v. Rome, 173 Ga. 239 (160 S.E. 249). It is true that subparagraph (a) of paragraph (10) specifically mentioned section 21 of the housing authorities law of 1937, but apparently, as we have indicated above, the allegations as to this section merely stated one of the "following reasons" why all of these statutes were invalid, and were not intended either as a separate or a separable attack upon section 21. However, even assuming that section 21 was by itself sufficiently assailed, a decision as to this section alone would be futile, for a similar provision was contained in the act of 1939 (Ga. L. 1939, p. 124), and there was no separate attack upon the latter provision. Compare Flournoy v. Wiener, 321 U.S. 253 (64 Sup. Ct. 548,88 L. ed. 478). It may also be mentioned, as at least a partial barrier, that no attack is made upon the Federal housing act, wherein it is declared that all loans, income, assets, and property of the United States Housing Authority "shall be exempt from all taxation now or hereafter imposed by the United States or by any State, county, municipality, or local taxing authority." United States Housing Act of 1937, § 5 (e), 42 U.S.C.A., § 1405 (e). See Flournoy v. Wiener, supra. *Page 586 
Accordingly, in any view of the petition, all attacks upon the statutes fail, and therefore the statutes are to be treated as valid for the purposes of the present case. It follows that there is no merit in the complaints as to unlawful discrimination, or the taking of property without due process of law, or as to any other matter depending upon the validity or invalidity of these statutes.
2. There are additional reasons why the petition can not be sustained as to some of the matters of which complaint is made. There being no allegation to show a dereliction of duty or impending dereliction on the part of the taxing authorities, it is to be presumed that all of the properties mentioned will be duly taxed through proper official action, if they are subject to taxation under the constitution. In other words, it does not appear that these statutes are about to be given effect, so as to exempt any property from taxation. A mere agreement or representation by the housing authority that its bonds are exempt from taxation would be no indication that the taxing officers will give assent, so as to apply the statute to the plaintiff's injury. See, in this connection, Dennison Manufacturing Co. v.Wright, 156 Ga. 789 (4 a), 797 (120 S.E. 120). While the commissioners of roads and revenues have taken action to put the regional housing act of 1943 into effect, they are not the officers who are charged by law with the assessment and collection of taxes.
Moreover, only the housing authority was sued, and it is difficult for us to see how the question of tax exemption can be litigated solely between the party claiming the exemption and another taxpayer. As to a different remedy, which may or may not be applicable, see Tarver v. Mayor Council of Dalton,134 Ga. 462 (67 S.E. 929, 29 L.R.A. (N.S.) 183, 20 Ann. Cas. 281); Richmond County v. Steed, 150 Ga. 229
(103 S.E. 253). In Williamson v. Housing Authority of Augusta,186 Ga. 673 (199 S.E. 43), we passed upon the question as to exemption of property of an urban housing authority; but in that case the City of Augusta was made a party defendant, and an injunction was prayed against the city to restrain it from carrying out a contract made with the housing authority. We did not have any question as to tax exemption in Barber v. HousingAuthority of Rome, 189 Ga. 155 (5 S.E.2d 425), or in Hogg
v. Housing Authority of Rome, 189 Ga. 164 (5 S.E.2d 431), and consequently neither of those cases would *Page 587 
authorize a decision as to the tax-exemption provisions, under the allegations of the instant petition, and with only the housing authority as a defendant. Any such decision would be merely advisory, and would not be res judicata against the taxing authorities.
The two cases last-above cited involved contentions as to an unlawful expenditure of Federal funds, and as to this point it was held that the plaintiffs did not show such an interest as would entitle them to complain. This did not mean that additional reasons for the same judgment might not exist. Taylor v.Boles, 191 Ga. 591, 600 (13 S.E.2d 352).
Nor does the petition show that the governing authorities of Thomas County have entered into or are about to enter into any service contract with the defendant, or that they have paid or intend to pay any sum as expense of the first year's operation. Consequently, it does not appear that the plaintiff as a taxpayer is about to be injured by any action as to either of these matters. In the circumstances, he cannot be heard to attack the statutes as to these subjects. Hogg v. Rome, 189 Ga. 298
(6 S.E.2d 48).
3. But it was alleged, in subparagraph (s) of paragraph 10, that, "the acts, conduct, and agreements are illegal and void and not in compliance with the acts of the General Assembly of Georgia hereinabove referred to, for the reason that said project does not provide for the clearance of slums except by the agreement of the farmer that he will demolish a substandard house located on his farm, which plaintiff alleges does not constitute a clearance of slums within the meaning of the housing authorities law, as amended." This averment assumes that the statutes are valid, and complains only of a violation or noncompliance. In Emerson v. Southwest Georgia HousingAuthority, supra, we held that an allegation in substantially the same language was a mere conclusion, and did not show that the statutes were being violated. In view of that ruling, it would seem that a petition ought to show more as to the character of the house that is to be removed, and it may be that the actual conditions and surroundings, including other habitations in the particular area, should also be alleged. But in theEmerson case, we might have said further that if property otherwise exempt from taxation would lose its exemption by ultra vires acts of the housing authority, this fact alone would not entitle the plaintiff as a taxpayer to relief in equity. It is again *Page 588 
to be presumed, prima facie, that the tax authorities will perform their duty and go after it, if it is taxable. Furthermore, as we have just said, it does not seem that the plaintiff as a taxpayer could litigate this question solely with the housing authority.
4. There is another question that may and doubtless should be determined without reference to the constitutionality of any of these statutes. It was alleged in subparagraph (b) that the loan contracts, and the notes and bonds to be issued in pursuance thereof, are themselves in violation of the constitutional provision that no county, municipality, or political division shall incur any debt without the assent of two-thirds of the qualified voters. Code, § 2-5501. There being nothing in any of these statutes regarding assent of voters, the question is simply one as to whether the obligations mentioned would themselves appear to be contrary to the constitutional provision relied on. We answer this question in the negative, in so far as the present petition is concerned. Whether there be, as contended, material differences between the amendment of 1943 and the act of 1937 as to the incorporation of housing authorities, and whether the amendment of 1943, under which the defendant claims existence, be valid or invalid as to this matter, the plaintiff, having sued Southwest Georgia Regional Housing Authority as a corporate entity, is estopped to deny its corporate existence. Therefore, for present purposes, the defendant must be treated as a corporate entity. It is not, however, either by reason of such estoppel or by the terms of the statute, a county, municipal corporation, or political division within the meaning of the stated constitutional provision, and therefore its obligations will not be debts of a county, municipality, or political division, within the purview of that provision. State v.Regents of the University System, 179 Ga. 210
(175 S.E. 567). In City of Valdosta v. Singleton, supra, the city itself was about to issue the obligations.
While it has been held by some courts that housing authorities created under similar statutes are municipal corporations in the broad sense that their property might be treated as public property for the purpose of tax exemption, the regional authority here could not be correctly classified as a municipal corporation within the meaning of the foregoing debt clause of our constitution.
The petition did not state a cause of action, and was properly dismissed on general demurrer.
Judgment affirmed. All the Justice concur. *Page 589